In the Matter of the Estate of SAMUEL WESTURN, Deceased; ADELE CARNEY et al., Appellants; F. S. PACKARD, County Treasurer of Warren County, N. Y., Respondent.

1. TRANSFER TAX — APPRAISAL BEFORE CLAIMS ASCERTAINED. The power of a surrogate to appoint an appraiser and fix a transfer tax on a decedent's estate does not depend on the prior ascertainment of the facts as to claims against the estate ; but the time when he shall proceed, where the interests are ascertainable and certain, must, in general, be left to his sound judgment.

2. DEDUCTION OF COMMISSIONS. A sum for the commissions of administrators is properly deducted by the surrogate in the valuation of an estate for the purpose of a transfer tax.

3. DEDUCTIONS OF EXPENSE OF LITIGATION. A sum expended by successful contestants in litigation over a will, although the court charges costs and allowances in their favor upon the estate, cannot be deducted in valuing the estate for the purpose of a transfer tax.

4. DEDUCTION OF NOTE IN LITIGATION. A note on which suit has been brought by administrators, and is still pending when an appraisal for a transfer tax is made, should be excluded from the valuation, and reserved for future appraisement in case the administrators succeed in collecting it.

5. TRANSFER TAX — APPEAL TO SURROGATE FROM APPRAISAL — NEW ALLEGATIONS. On appeal to a surrogate from the confirmation of an appraiser's report as to an estate for the purpose of a transfer tax and from an assessment of the tax in conformity therewith taken under section 13 of the act of 1892, appellants should be permitted to file additional allegations that since the appraisal, litigation has been commenced to determine who are the heirs and next of kin of the decedent, thus creating a controversy which affects the title to the whole estate, although the sixty days allowed for an appeal have expired and the grounds specified in the notice of appeal do not include the matter of these allegations, when it appears that the litigation was not commenced until after the expiration of the time allowed for an appeal; and the surrogate should either postpone the appraisement until the litigation is determined, or at least receive and consider the proofs of the allegations.

*Matter of Westurn*, 8 App. Div. 59, reversed.

(Argued February 1, 1897; decided March 2, 1897.)

APPEAL by heirs at law and next of kin of Samuel Westurn, deceased, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered July

14, 1896, affirming an order of the surrogate of the county of Warren, which modified, and as modified, affirmed, an appraisal made of the estate of Samuel Westurn, deceased, under the Transfer Tax Law, and assessing a tax thereon.

Samuel Westurn, a resident of Warren county, died May 22, 1890, possessed of real and personal estate in this state. He left no parent, widow, children or descendants of children surviving him. By his will, dated March 20, 1882, he devised all his property to Lewis Burgess and appointed him his sole executor. The executor presented the will for probate to the surrogate of Warren county. The probate was contested by the present appellants, claiming to be the sole heirs and next of kin of the decedent, on the ground, among others, that the will was obtained by the fraud and undue influence of the beneficiary. The contestants were children of a deceased brother of the decedent by the same parents. The surrogate established the will and admitted it to probate November 24, 1890, and granted letters testamentary thereon to Lewis Burgess, the executor. The contestants appealed from the decree of the surrogate admitting the will to probate to the General Term of the Supreme Court, and that court reversed the decree of the surrogate and directed issues to be tried by a jury. On the first trial the jury disagreed. On the second trial the jury found that the will was procured by the fraud and undue influence of Lewis Burgess. Judgment was entered declaring the will to be void, and it awarded costs to the contestants in the sum of $1,155.43, to be paid out of the estate. The executor appealed from the judgment to the General Term, and in May, 1894, the judgment was affirmed. Thereupon the executor appealed from the judgment of affirmance to the Court of Appeals, and on May 21, 1895, it rendered its decision affirming the judgment. Thereafter, June 3, 1895, letters of administration on the estate of the decedent were issued by the surrogate to one of the contestants and one Keeffe. September 16, 1895, the administrators advertised for the presentation of claims within six months thereafter, which would expire March 16, 1896. October 8, 1895, the

administrator of one Lucinda Taft presented to them an
unverified claim in behalf of the estate he represented against
the estate of Westurn, for six years' services of Lucinda Taft,
as housekeeper, postmistress and manager of Westurn's busi-
ness from March 1, 1882, to March 1, 1888, at $30 a
month, amounting in the aggregate to $2,160. The claim
was not admitted by the Westurn administrators, but whether
it has been formally rejected by them does not appear. On or
about December 12, 1895, one Mary Clark presented to the
surrogate a verified petition, upon which the surrogate on or
about January 3, 1896, issued a citation to the administrators
of Westurn, requiring them to show cause at the Surrogate's
Court on the 12th day of January, 1896, why the letters of
administration issued to them June 3, 1895, should not be
revoked. The grounds of the application were set forth in the
petition. The petition challenged the claims of the persons
who had theretofore been recognized in the proceedings as the
heirs and next of kin of the decedent Westurn, and asserted
that they did not occupy that relation to him, and it is alleged
that decedent Westurn was the illegitimate son of one Sally
Burgess by Samuel Westurn, his father, and that Samuel
Westurn, his reputed father, and his mother, Sally Burgess,
never intermarried. It further alleged that Sally Burgess
afterwards married, and that the petitioner and three other
persons named were her children by such marriage, and the
only heirs at law and next of kin of their illegitimate brother
Samuel Westurn, the decedent. The administrators of Sam-
uel Westurn, January 10, 1896, served notice of motion before
the surrogate for January 20, 1896, to vacate and set aside the
citation issued January 3, 1896, upon the ground that it
improvidently issued, without sufficient proof. This notice
came on to be heard on the day mentioned, and was dismissed
by the surrogate upon the preliminary objection that the cita-
tion had not been served on the administrators of Westurn,
and that they had no standing in court to make the motion.
The administrators thereupon appealed to the Supreme Court
from the order of dismissal, giving the requisite undertaking,

and, so far as appears, the appeal has not been heard or decided.

It is necessary to go back and state some other facts which bear upon the question involved in this appeal. July 6, 1895, a little more than a month after the issuing of the letters of administration on Westurn's estate, the surrogate, apparently on his own motion, appointed an appraiser to appraise the estate of Westurn under the Transfer Tax Law. The appraiser took evidence, and returned it with his report. He assessed the real estate of Westurn at $10,000, and his personal estate, less commissions of the administrators, at $7,820. He also separately valued and returned the share of each of the five nephews and nieces (appellants), and the tax thereon. He included among the personal assets of the decedent an alleged note of Lewis Burgess (the executor and beneficiary under the will) of $1,500, and which the appraiser valued, including interest, at $1,807.50. Burgess was examined under oath before the appraiser, and testified : " There was no note of $1,500 against me. It was paid." It also appeared that Burgess had not accounted for the estate which came to his hands as executor, and that a suit was pending against him, brought by the administrators in behalf of the estate for an accounting and to collect the $1,500 note. It appeared that outside of the note there was $800 belonging to the estate for which Burgess had not accounted. The appraiser rejected a claim by the next of kin to have the expenses they incurred in litigating the will deducted from the appraisal. The appraiser certified, so far as he had been able to ascertain, the estate owed no debts. The appraiser made his report to the surrogate, with the evidence, September 19, 1895, and on the same day the surrogate confirmed the report and assessed the tax in conformity therewith. Notice was given of the assessment order, and in due time, November 11, 1895, an appeal was taken by the nephews and nieces from the appraisal and assessment to the surrogate, setting forth in the notice of appeal various grounds of appeal, among others that the real estate was overvalued ; that the personal estate of the

decedent had not been received by the administrators, and that litigation for its recovery was pending; that the time for the presentation of claims had not expired; that large expenses had been incurred in the litigation arising out of the probate of the will, which should have been deducted; that the Burgess note should not have been included in the amount, etc. The surrogate heard the appeal on the report of the referee and on additional evidence taken before him, and on February 24, 1896, confirmed the assessment and fixed the tax against the several interests in accordance with the appraiser's report, except that he modified the allowance of interest, as to which no question now arises. The surrogate refused to permit the appellants to file additional allegations on the hearing to the effect that since the appraisal, litigation had been commenced to determine who were the heirs and next of kin of Westurn, or in respect to the claim presented in behalf of the estate of Lucinda Taft. The surrogate, on the hearing referred to, refused to receive in evidence the petition of Mary Clark for the revocation of the letters of administration, or the other papers in connection therewith, to which reference has been made. The appellants appealed to the General Term from the order of the surrogate assessing the tax. The order was affirmed by a divided court, and the appellants have brought the present appeal.

*John C. Keeler* and *A. Armstrong, Jr.*, for appellants. Appellants should have been permitted to file additional allegations in respect to the claim of Mary Clark. (*In re McPherson*, 104 N. Y. 306.) The tax is not imposed upon the estate, but only upon so much of it as passes, and not until it does pass to the person or persons whose interests are subject to the tax. (*In re Howe*, 112 N. Y. 100; *In re Clark*, 22 N. Y. S. R. 354; *In re Curtis,* 73 Hun, 185; 142 N. Y. 219; L. 1885, ch. 483; L. 1887, ch. 713; *In re Cager*, 111 N. Y. 343.) The taxes imposed by the Collateral Inheritance Tax Act are special, not general. (*In re McPherson*, 104 N. Y. 306.) The

13

rule is that special tax laws are to be construed strictly against the government and favorably to the taxpayers; that a citizen cannot be subjected to special burdens without clear warrant of law. (*In re Enston*, 113 N. Y. 174.) It is not now known whether any portion of the personal estate will ever pass to beneficiaries, or distributees, and it would be a travesty upon justice to impose this tax upon the appellants, when they may never receive a dollar of this estate. (*In re Roosevelt*, 143 N. Y. 120.)

*J. A. Kellogg* for respondent. The appraiser and surrogate very properly refused to deduct the expenses of the litigation between the various claimants to the property. (*In re Swift*, 137 N. Y. 77; *In re Hoffman*, 143 N. Y. 327; *In re Seaman*, 147 N. Y. 69; *In re Hamilton*, 148 N. Y. 310; *In re Davis*, 149 N. Y. 539; *In re Millward*, 6 Misc. Rep. 425; *In re Merriam*, 141 N. Y. 479; *In re Vassar*, 127 N. Y. 1; *In re Sterling*, 9 Misc. Rep. 224; *In re Prime*, 136 N. Y. 347; *In re Fayerweather*, 143 N. Y. 114.) The appraisal of the tax need not be deferred until the next of kin come into actual enjoyment of the estate. It may be very properly assessed while in the hands of the personal representatives. (*In re Prime*, 136 N. Y. 347; *In re Fayerweather*, 143 N. Y. 114; *In re Davis*, 149 N. Y. 539; L. 1887, ch. 713, §§ 4, 6, 7, 8, 10; *In re Vassar*, 127 N. Y. 1; *In re Merriam*, 141 N. Y. 479; *In re Seaman*, 147 N. Y. 69.) The fact that new litigation has sprung up since the appraisal was immaterial, and the surrogate very properly excluded evidence of such a fact. (L. 1887, ch. 713, § 12; L. 1892, ch. 399, § 6; L. 1896, ch. 908, § 225; *In re Davis*, 149 N. Y. 539.) The surrogate very properly refused to make deduction for claims which it was alleged had been or would be presented against the estate. (L. 1887, ch. 713, § 10; L. 1892, ch. 399, § 6; L. 1896, ch. 908, § 225; *In re Davis*, 149 N. Y. 539.) The surrogate properly refused to allow the amendment of the notice of appeal. (*In re Davis*, 149 N. Y. 539; Code Civ. Pro. §§ 783, 784; *Lavalle* v. *Skelly*, 90 N. Y. 546.) The

imposition of ten per cent interest after the appointment of the administrators was proper. (L. 1887, ch. 713, § 5 ; L. 1882, ch. 399, § 4.)

Andrews, Ch. J. The litigation over the probate of the will of the decedent was finally terminated by the decision of this court, May 21, 1895, in favor of the contestants. It was not until the final determination of the controversy, by the judgment of this court, that it could be known whether the property of the decedent passed under his will or as in case of intestacy, and, until this fact was ascertained, it was impracticable to proceed to fix the transfer tax under the act of 1892, or the prior statutes; since the ascertainment of the persons entitled to the property of a decedent must precede the imposition of any tax. This has been the uniform construction given by this court to the Transfer Tax Acts. It has been steadily maintained that the tax, while in a general sense a tax on the property of a decedent, is, in its essential nature, under the legislation on the subject, a tax on the right to succession to the property, imposed upon and collectible out of each specific share or interest given by will or derived under the Statutes of Descent or Distribution, and limited as to each share or interest to its value, with a superadded personal liability for the payment of the tax by the person taking the interest. The tax is computed, not on the aggregate valuation of the whole estate of the decedent considered as the unit for taxation, but on the value of the separate interests into which it is divided by the will or by the statute laws of the state, and is a charge against each share or interest according to its value, and against the person entitled thereto. The principle that the tax is a succession tax imposed as a burden on each person claiming succession, measured by the value of his interest, and collectible out of his interest only, was reaffirmed in the case *In re Hoffman* (143 N. Y. 327), arising after the passage of the Transfer Tax Act of 1892, and the court rejected the contention that the principle of construction to which we have adverted, established under

the acts of 1885 and 1887, was not applicable to the act of 1892. The court has applied this rule of construction to cases of future contingent interests given by will, which might never become vested, and also to cases where, although there may have been a technical vesting of a future estate, the estate was liable to be defeated before it came into actual enjoyment. (*Matter of Curtis*, 142 N. Y. 219; *Matter of Roosevelt*, 143 id. 120; *Matter of Hoffman*, *supra*. See, also, *In re Cager*, 111 id. 343.)

The delay, therefore, in fixing the tax in the present case, awaiting the result of the contest over the will, was inevitable, and in no way chargeable to the heirs or next of kin, whose rights were first judicially ascertained and finally settled by the judgment in this court declaring the will to be void. There was no delay thereafter in putting the estate in the course of settlement. Letters of administration were issued June 3, 1895. The surrogate, on July 6, 1895, on his own motion, appointed an appraiser. This was before the administrators had or could have advertised for the presentation of claims against the estate. It is insisted that the appointment of an appraiser and the fixing of the tax on September 19, 1895, was premature, and that, until an opportunity had been given to ascertain whether any claims would be presented, no appraisement could be made nor any tax assessed. There can be no doubt, we think, that, in ascertaining the value of the estate of the decedent and the value of the taxable interests, debts owing by him are to be deducted. They are charges which qualify the estate and are first to be paid before there can be any distribution of the personal estate to legatees or next of kin. The real estate is liable also to be sold for the payment of debts when the personal estate is insufficient for that purpose. The tax imposed by the act is upon " the transfer " of property by will or by the intestate laws of the state. (Act of 1895, § 1.) Whether the transfer is by will or by operation of law, the real interest passing is what remains after payment of debts and other charges. It is plainly inferable from the sixth section of the act that the debts of the decedent are

to be deducted in arriving at the valuation of the property and in fixing the tax. That section authorizes a proportionate amount of a tax to be refunded in case debts against the estate shall be proven after the tax shall have been paid.

But it is the contention of the appellants that the surrogate had no power to appoint an appraiser or to fix the tax until the fact whether there were claims against the estate had been ascertained in the usual course. We find no such limitation in the language of the act. Section 11, which authorizes the appointment of an appraiser, contains no general limitation of time. The surrogate is authorized, upon the application of any interested party or upon his own motion, to appoint an appraiser "as often as and whenever occasion may require." It seems to be left to his sound discretion when the power shall be exercised, with a proviso, however, relating to future and contingent estates not important in the present case. When an estate is in the ordinary course of administration, it would seem to be prudent and reasonable for the surrogate to take notice of the statutory system for the settlement of estates, and to defer the appointment of an appraiser for the period necessary to enable the executor or administrator to advertise for claims and ascertain whether there are any creditors. But it has been held that the surrogate is not bound to await a final accounting before proceeding under the statute. (*Matter of Vassar*, 127 N. Y. 1.) In many cases of large estates it would be perfectly safe for an appraisal to proceed before an accounting and for the surrogate to fix the tax on legacies, or even on the residuary interests, reserving from the appraisal at that time a sum adequate to meet all probable debts and charges and leaving the adjustment of the tax on the part reserved for a future occasion. The time when the surrogate shall proceed, where the interests are ascertainable and certain, must, we think, in general, be left to his sound judgment. In this case the claim presented seems to be of a doubtful character, and if it should be established after the estate shall have been distributed and the tax paid, the interests of the distributees are fairly pro-

tected by the sixth section of the act, to which reference has been made. In the valuation of the estate the surrogate deducted a sum for the commissions of the administrators. The principle that, in administering the statute, debts, commissions and expenses of administration should be deducted in ascertaining taxable values, accords with the general practice and is permitted by a just construction of the law. (See sections 6, 8. See, also, *In re Lines' Estate*, 155 Pa. St. 379.)

The appellants further insist that the surrogate erred in refusing to deduct from the valuation of the estate the sum expended by them in the litigation over the will. We think the surrogate properly disallowed this item. It was not a claim existing against the decedent or his property. The tax imposed by the statute is upon the interests transferred by will or under the intestate law of the state. The devolution of the property and the right of the state have their origin at the same moment of time. The ascertainment of the value of the taxable interest and the fixing of the tax necessarily takes place subsequent to the death. But the guide is the value at the time of the death, when the interests were acquired. The fact that the appellants were put to expense in asserting their rights and were embroiled in expensive litigation to obtain them, was their misfortune. It did not diminish the value of the interests which devolved upon them on Westurn's death. It was a loss, but a loss to their general estate. It did not prevent them receiving the whole interest transmitted to them. The fact that the court charged certain costs and allowances in their favor upon the estate did not change the situation. It was practically a charge upon their own property for the benefit of their attorneys.

It was error for the surrogate to include in the appraisement the amount of the note of Lewis Burgess. He testified in the proceedings before the appraiser that the note had been paid. The administrators had brought suit against him to recover the note as an asset of the estate, and the litigation was pending undetermined both at the time of the appraisal and of the appeal to the surrogate from the valuation and

assessment of the tax, and it depended upon the result of that litigation whether Burgess owed the estate the amount of the note. If the note had been paid, it was not taxable as an asset. It was, we think, the plain duty of the surrogate to have excluded this claim from valuation at the time, reserving it for future appraisement in case the administrators succeeded in collecting it.

We are also of opinion that the surrogate should have permitted the appellants to have filed the additional allegations in respect to the claim of Mary Clark, that she and her brothers and sisters were the sole heirs and next of kin of Westurn, and to have received and considered the proofs offered to show that a litigation had been commenced in the Surrogate's Court to revoke the letters of administration granted June 3, 1895, based on this claim. It is not suggested that the proceeding was collusive. The application to the surrogate in behalf of the persons contesting the claim of the appellants to be the heirs and next of kin of Westurn, was based upon positive statements under oath. If their claim is well founded it is manifest that the tax could not be assessed against the appellants. They would in the case supposed have no taxable interest. The conflicting claims of the appellants and of Mary Clark and those she represented involved a controversy which affected the title to the whole estate. The surrogate should either have postponed the appraisement until the litigation was determined, or at least should have received and considered the evidence. It is not necessary now to determine, whether as incident to his jurisdiction in tax proceedings under the statute, he could determine which set of claimants was entitled to the estate. It is claimed that the surrogate properly refused to permit the new allegations based on the claim of Mary Clark to be filed, since the sixty days had expired during which an appeal must be taken, and for the further reason that the statute requires the notice of appeal to specify the grounds of appeal, and that there was no reference in the notice served by the appellants to the claim of Mary Clark. The appeal to the surrogate, given by section

13 of the act of 1892, is in the nature of an application for a rehearing upon which new evidence may be taken, bearing upon the questions involved. The requirement that the notice of appeal shall specify the grounds of appeal, implies that in the prior proceedings, questions had been raised and decided, upon which error could be assigned. But the new fact in the case, viz., the claim of Mary Clark, was not disclosed until after the appeal was taken, and after the expiration of sixty days from September 19, 1895, when the original order of the surrogate fixing the tax was made. We think the statute ought to be construed so as to permit the raising upon an appeal, of a question which did not enter into the original determination, and which was first made known after the appeal had been taken, and after the expiration of the sixty days. The surrogate had jurisdiction of the appeal by the notice actually given, and it would be an unwise construction of the act to limit the hearing so as to exclude the consideration of a new question subsequently arising, on the ground that it was not specified in the notice of appeal.

The case *In re Davis* (149 N. Y. 540) did not involve the question here presented.

We think the order of the surrogate should be reversed.

All concur.

Order reversed.