(46 App. Div. 574.)

### In re PULLMAN'S ESTATE.

(Supreme Court, Appellate Division, First Department.  January 12, 1900.)

1. TAXATION—TRANSFER TAX—NONRESIDENT DECEDENTS.
   Where domestic creditors have the legal title and right to resort for the payment of their debts to securities belonging to a nonresident decedent, which are not taxable under the laws of New York, the debts due such creditors cannot be set off against the value of his property otherwise taxable under the transfer tax law.

2. SAME.
   Bonds and stocks of domestic corporations belonging to a nonresident decedent, held in pledge as collateral by creditors in New York, being taxable property in that state, are not taxable under the transfer tax law before the debts are paid.

   Van Brunt, P. J., dissenting.

Appeal from surrogate's court, New York county.

Appraisal of the property of George M. Pullman, deceased, for taxation under the transfer tax law.  From a surrogate's order affirming the appraisement, and the determination of the tax, Helen P. West and other beneficiaries under decedent's will appeal.  Modified.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

Howard Mansfield, for appellants.
James M. Hunt, for respondent.

PATTERSON, J.  The principal question arising on these appeals relates to the right of the proper authorities of the state of New York to determine and fix the amount of a tax under the transfer tax law of the state on certain property situate within the state, and which at the time of his death belonged to George M. Pullman, a resident of the state of Illinois.  The application to have the property assessed, and the amount of tax determined, was made by the comptroller of the city of New York under the direction of the comptroller of the state of New York; and it was made to appear to the surrogate, by petition, that Mr. Pullman died in the city of Chicago in October, 1897, leaving a will which was admitted to probate on October 27, 1897, in Cook county, Ill.  The executors named in that will qualified.  There is nothing in the record to show that ancillary letters have been applied for or taken out within the state of New York.  The decedent's estate was solvent, the assets being five times in excess of the liabilities.  At the time of his death, Mr. Pullman was the owner of bonds and stocks actually within the state of New York, such bonds and stocks being of corporations organized under the laws of the state of New York, and he also had on deposit in a trust company in the city of New York a large sum of money, and he was also possessed of certain other personal property situate in New York, having a market value of several thousand dollars, and the aggregate value of all this property was about the sum of $774,000.  At the time of his death, Mr. Pullman was indebted to various persons and corporations in the state of New York, and doing business in the city of New York, in the sum of something over $800,000.  That indebtedness

was secured by a pledge of bonds actually located within the state, and having a market value of about $26,000, and partly by a pledge of capital stock of various corporations incorporated under the laws of states other than the state of New York; the market value of such stocks being in excess of the amount of the whole indebtedness. The appraiser appointed by the surrogate made an original report in which he found that, for the purposes of taxation under the transfer tax law, the testator's personal estate within the state of New York amounted to $744,191.66, from which should be deducted the expenses of administration, and the executors' commissions, and debts to the amount of $58,430; that being the value of the bonds and of the stock of New York corporations pledged as collateral security to the creditors in the city of New York. The first report of the appraiser was not approved by the surrogate who held that the $58,430 of securities was also taxable. That report was returned to the appraiser, who made a subsequent report in which he included that amount in the taxable value of the property, and that report was confirmed by the surrogate. A tax was declared on a certain proportion of the aggregate ascertained value, and not upon another portion thereof, for the reason that it could not then be presently ascertained in whom such other portion would ultimately vest; there being life estates and remainders created with respect to such other portion. Helen P. West and Emma P. Fluhrer, sisters of the decedent, for whom certain provisions were made under the will, and Florence Lowden and Harriet Carolan, daughters of the decedent, and his residuary legatees, appeared before the surrogate and objected to the imposition of the tax, and they now appeal from the order of the surrogate, and ask for a reversal of that order, upon three specific grounds, which are stated as follows: First, that, inasmuch as the decedent at the time of his death was indebted to local creditors to an amount greater than the ascertained market value of the local assets, there was no property of the decedent within the state of New York subject to a transfer tax under the act; second, that, under the laws and policy of the state of New York, all of the local assets of the decedent were absolutely subject to, and primarily liable for, the payment of the indebtedness to local creditors, to the entire extent of such property; third, that the local assets, to the amount of $58,430, specifically pledged as collateral security for the payment of the indebtedness to local creditors, were liable to be entirely used for the purposes of such payment.

The argument of the learned counsel for the appellants proceeds upon the assumption that the indebtedness of Mr. Pullman to creditors in New York is to be considered from the point of view of the locality of that indebtedness, and that, inasmuch as such debts are in excess of the market value of the taxable assets situate in this state, there was no property actually in the state which would pass under the will to any beneficiary in accordance with the terms and interpretation of the transfer tax law. It is claimed that under the provisions of that law, and the decisions of the courts of this state, debts are to be offset against assets, in ascertaining what property of a decedent is liable to the transfer tax. Where the whole estate is within the state of New York, and the decedent is a resident of

the state, undoubtedly debts are to be deducted from the value of the property. "They are charges which qualify the estate, and are first to be paid, before any distribution of the personal estate to legatees or next of kin. ⁎ ⁎ ⁎ The real interest passing is what remains after payment of debts and other charges." In re Westurn's Estate, 152 N. Y. 93, 46 N. E. 315. But in this case the indebtedness to the creditors in New York is a general indebtedness. It appears by the affidavit of one of the executors that that indebtedness is payable on demand. It is an indebtedness against the whole estate, and, irrespective of the question of pledge, not one for which any particular assets, no matter where situated, would be liable. The question presented is a practical one, and not to be decided upon any mere theory or assumption that local creditors, with security in their hands, on the failure of the foreign executors to pay the debts will relinquish the security, and look to what are called "local assets" for the payment of their claims in the general course of administration under ancillary letters to be issued hereafter in this state. The situation is simply this: There is taxable property of a nonresident decedent in this state, for the shares and bonds are subject to taxation. In re Bronson's Estate, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238. Prima facie, there is a tax due and payable to the state of New York, and the state has a lien upon the property until the tax is paid. Laws 1892, c. 399, § 3. The surrogate had authority to appoint an appraiser and to fix the tax. In re Westurn's Estate, 152 N. Y. 93, 46 N. E. 315. There is nothing before the court to show that any claims of creditors will ever be presented, but, on the contrary, the presumption is that the creditors in New York will pursue the ordinary course of making their demands upon the foreign executors, and, in the event of the debts not being paid, resort to the securities they hold. It is true that such collateral securities are not a primary fund for the payment of their debts, and it is also true that an ancillary administrator with the will annexed would be under an obligation to pay domestic creditors before he remitted the assets here to the foreign executors, if such creditors presented their claims for payment. But the provisions of the law respecting the application of assets within the jurisdiction to the payment of domestic creditors are made for the protection of those creditors. There is nothing in this record to show that ancillary administration ever will be taken or required, or that creditors need protection. The contention of the appellants involves the proposition that these creditors, amply secured, would either abandon or surrender or put aside their security, and look for the payment of demand debts in the slow process of administration of the estate in New York. If the personal property here, taxable under the law of this state, is to be held exempt because of the mere existence of these local debts, secured as they are, then it is obvious that the statute may be successfully evaded. We think the conclusion reached by the learned surrogate was right, and that where domestic creditors have in their hands the legal title, and the right to resort for the payment of their debts to securities belonging to a nonresident decedent which are not taxable under the laws of this state, the indebtedness due such creditors is not to be offset against

the value of property of such decedent otherwise taxable under the transfer tax law of the state.

The question raised by the appellants West and Fluhrer as to their specific legacies is disposed of adversely·to their contention by what was decided in Re Hoffman's Estate, 143 N. Y. 327, 38 N. E. 311. But, as to the $58,430 of bonds and stocks of domestic corporations held in pledge, we think the order is incorrect. Those securities are liable to be resorted to by the creditors. In pledge, the title to them is in the pledgee, and they are not in a situation to be taxed now as property of the estate of Mr. Pullman. All of their amount may be required to pay the debts to which these bonds and stocks are collateral, and the creditors' security should not be diminished' at this time.

The order appealed from should be modified by deducting the $58,430 from the assessment, and as modified affirmed, without costs to either party.

O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ., concur.

VAN BRUNT, P. J. I dissent from the conclusion arrived at by Mr. Justice PATTERSON. I am of the opinion that the question is to be considered as though ancillary testamentary letters had been taken out. If such were the case, there is no doubt but that the executor would not only have the right, but it would be his duty, to apply the money in bank to the payment of the debts, rather than allow the creditor to resort to the collaterals held by him; and I can see no reason why such an executor could not, in the course of administration, determine which and what securities should be sold to pay debts in case the cash on hand was not sufficient for the purpose. He could certainly not be compelled to resort to a particular security because it was not subject to taxation. It seems to me that we must assume that he would pursue that course of administration which would be the least burdensome to the estate; and that would be, all other things being equal, to apply taxable securities for the payment of debts, retaining the others for distribution.