IN MATTER OF ASSESSMENT OF COLLATERAL INHERITANCE TAX in re ESTATE OF LOUIS BERNERO; CLOTILDA LONGINOTTI et al., Appellants.

Division Two, July 16, 1917.

1. **COLLATERAL INHERITANCE TAX: Assessment After Close of Administration.** Unless the statute otherwise directs, the probate court has jurisdiction to assess a collateral inheritance tax against the interests of the heirs or devisees after final settlement of decedent's estate. The proceeding is not one against decedent's property, but is against the interest or property right to which the devisees or heirs succeeded in the property formerly held by him.

2. ———: ———: Statute. The statute (Sec. 326, R. S. 1909) declaring that the probate court "having jurisdiction of the settlement of the estate of decedent, shall have jurisdiction to hear and determine all questions in relation" to the assessment of a collateral inheritance tax that may arise, does not mean that the court, after administration of the estate is closed, does not have jurisdiction to assess a collateral inheritance tax against the interests of legatees or heirs. It simply points out the particular court that is to have jurisdiction of the matter.

3. ———: Res Adjudicata: Unascertainable Legatees: Life Estate With Power of Disposition. An assessment of a collateral inheritance tax, during the course of the administration of decedent's estate, against such property as was then known to be subject to such tax, did not operate as *res adjudicata* of a subsequent right to assess the tax against other property devised to then unascertain-

271 Mo.—34

able devisees. Where testator's will gave such other property to his wife during her life, with remainder over to an adopted son if he survived her, but if she survived him with unrestricted power in her to devise said property, and she did survive the adopted son and after the close of the administration devised the property to her nephews and nieces, it could not be seen until her will was made upon whom the succession would devolve, nor could it be foreseen that the transmission would be subject to a collateral inheritance tax at all.

4. ————: Assessment Pending Will Contest: Premature. Where a suit has been instituted to contest the validity of a will devising property to the persons against whose interests it is sought to have a collateral inheritance tax assessed, the proceeding in the probate court to assess the tax should be postponed until the will contest suit is finally adjudicated. The tax is not upon the property, but upon the interests of the legatees, and if their interests depend upon the validity of the will it cannot be known that they have any interest until the will is established, and it cannot be held to be established so long as a contest suit once timely begun is pending.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

REVERSED AND REMANDED.

*Stewart, Bryan & Williams, Schnurmacher & Rassieur* and *John M. Goodwin* for appellants.

(1)The estate of Louis Bernero, Sr., deceased, having been finally administered, final settlement thereof having been had and approved, and the executrix and executor thereof having been discharged in December, 1908, the probate court in January, 1912, had no jurisdiction over the estate of Louis Bernero, Sr., deceased, and therefore had no authority to appoint an appraiser and appraise and assess collateral inheritance taxes in said estate, and its acts in this behalf are void. The power of taxation is a sovereign right which belongs alone to the State, and which can only be exercised in pursuance of laws passed by the Legislature for that purpose. There can be no such thing as an implied power to levy a tax. Such power must be clearly and expressly given by statute. State ex rel. v. Railroad, 87 Mo. 239; State ex rel. v. Shortridge, 56 Mo. 130. A tax

In re Bernero Estate.

assessor can only proceed at the time and in the manner pointed out by statute to make his assessment, and to justify his assessment he must be able to put his finger on the statute that gives the authority to make it. Hannibal ex rel. v. Bowman, 98 Mo. App. 103; Arizona v. Mining Co., 233 U. S. 87; State ex rel. v. Lesser, 237 Mo. 318. Inheritance tax laws are construed strictly against the State and in favor of the citizen. In such cases the citizen has a right, both in reason and in justice, to claim that he shall be clearly brought within the terms of the law before he shall be subjected to its burden. State ex rel. v. McVeigh, 181 Mo. App. 573; Disston v. McClain, 147 Fed. 114; In re Enston's Estate, 21 N. E. (N. Y.) 87; Eidman v. Martinez, 184 U. S. 578; People v. Koenig, 37 Colo. 283; Estate of Harbeck, 161 N. Y. 211; Estate of Kimberly, 50 N. Y. Supp. 586; Estate of Kerr, 159 Pa. 512; Baily v. Henry, 143 S. W. (Tenn.) 1124; Lynch v. Union Trust Co., 164 Fed. 161. The Missouri Inheritance Tax Act only authorizes the judge of the probate court to appoint an appraiser and assess such taxes while such court has jurisdiction over the estate of decedent. Secs. 322, 323, 324, R. S. 1909. The probate court is powerless to set aside or change its own judgment approving the final settlement and ordering distribution. Such judgment is conclusive on all persons interested and can only be assailed by a direct action for fraud in another court. Caldwell v. Lockridge, 9 Mo. 362; Murray v. Roberts, 48 Mo. 307; State ex rel. v. Gray, 106 Mo. 526. Should newly discovered assets be brought to light after final settlement has once been had in the estate of a decedent, the probate court has no power or jurisdiction to reopen such estate for the purpose of administering these newly discovered assets. Administration *de bonis non* must be had and a new administration opened. Ratliff v. Magee, 165 Mo. 469. Inheritance taxation is a tax on the right or privilege of succession, or the right of the heir, devisee or legatee to receive. It is not laid upon the property itself, but upon the privilege or right of succession to it. State ex rel. v. Switzler, 143 Mo. 327; Estate of

Hite, 159 Cal. 392; Kochersperger v. Drake, 167 Ill. 122; Wieting v. Morrow, 151 Iowa, 590; Lacy v. State, 121 N. W. (Iowa) 179; Estate of Irish, 60 N. Y. Supp. 30; Estate of Linkletter, 134 App. Div. 309, 118 N. Y. Supp. 878; Estate of Macky, 46 Colo. 79; State v. Handlin, 139 S. W. (Ark.) 1112; State v. Hamlin, 86 Me. 495; State v. Alston, 94 Tenn. 674. The Missouri Inheritance Tax Act creates a personal liability for the tax against the heir, next of kin, legatee, devisee, etc., and also establishes a lien in favor of the State of Missouri upon a legacy to secure the payment of said tax. Sec. 309, R. S. 1909. The only function that the probate court performs is that of assessing values and amount of the tax and fixing the lien therefor. It does not and cannot render a personal judgment against the person liable for such tax. The probate court, therefore, should be limited in its power of fixing value of property so as to fix this lien, to the time when it has access to the assets and knowledge of who will succeed to the same within its control—that is, during the period of administration of the estate of decedent. The word "estate" as used in the Inheritance Tax Act has reference to and means the mass of property left by a deceased person. Wilson v. Massie, 70 Ark. 25; West v. Herman, 47 Tex. App. 131. The Missouri Inheritance Tax Act limits the power of the Probate Judge and the appraiser appointed by him to that of appraising and determining the values of "estates." Giving to the meaning of this word "estates" the idea of the mass of property left by decedent before distribution to his creditors, heirs or devisees, it must follow after such estate has been settled and such assets have been distributed, that there is no longer any such thing as an "estate" for a probate judge or an appraiser to assess. Sec. 326, R. S. 1909, provides that the probate court having jurisdiction of the settlement of the estate of decedent shall have jurisdiction to hear and determine all questions in relation to said taxes that may arise. This is a limitation of the probate court's power to pass on these questions, unless it then has jurisdiction over the settlement of the estate of decedent. After settle-

ment has been made and the estate closed, such jurisdiction has ceased. (2) The act of the probate court in assessing collateral inheritance taxes is a judicial act—a judgment. The amount of the collateral inheritance tax due in this estate on this same property or whether any was due at all, was determined by the probate judge of St. Louis in a proper proceeding for that purpose back in June, 1905, in the estate of Louis Bernero, Sr., during the administration of said estate. That judgment is conclusive and the same matter cannot now be reopened and retried. The Inheritance Tax Law confers upon the probate judge and probate court power to assess inheritance taxes, and confers upon said court the jurisdiction to determine all questions in relation to said tax that may arise affecting any devise, legacy or inheritance. Sec. 322, 323, 326, R. S. 1909. Where the statutes confer jurisdiction on a court or judge to hear and determine all questions in relation to inheritance taxes, the orders or judgments of that court or judge in the matter of appraising the estate and assessing the taxes, whether it be a probate court or a court of general jurisdiction, are final and conclusive, and the matters and things therein involved cannot be relitigated. The only remedy the parties have is by appeal. Ross on Inheritance Taxation, p. 326, sec. 290; In re Niven, 61 N. Y. Supp. 956; In re Rice's Estate, 61 N. Y. Supp. 911; In re Hackett's Estate, 35 N. Y. Supp. 1051; In re Clarkson's Estate, 149 N. Y. Supp. 32; In re Morss' Estate, 149 N. Y. Supp. 41; Commonwealth v. Freedley's Executors, 21 Pa. St. 33. The disposition made by Louis Bernero, Sr., by Item 5 of his will of the real estate at Ninth and Washington Avenue, with the exception of the life estate in behalf of his wife, Theresa, was subject to and taxable at the time of the first appraisement. Secs. 309, 310, 314, R. S. 1909. The plea of *res judicata* applies not only to all points which were actually passed upon, but to every point which properly belonged to the subject of the controversy and which the parties might have brought forward at the time. Emmert v. Aldridge, 231 Mo. 124; Donnell v. Wright, 147 Mo. 647; Cantwell v.

Johnson, 236 Mo. 603. (3) In any event the tax should never have been assessed alone against the Longonotti children, appellants herein, for the reason that pending litigation involving their title to the property taxed has not been disposed of and it cannot now be ascertained whether in fact these appellants have or will ever receive any interest in said property.

*O. M. Barnett* and *Ernest A. Green* for Curators of the University of Missouri.

(1) The statute merely means that the court which undertakes to assess the tax on property included in the estate of a decedent must be the same court which the statute has vested with jurisdiction over the settlement of the decedent's estate, even though the court has already actually administered the estate. Appellants have confused the possession of jurisdiction with its exercise. Woerner on Administration, sec. 506. The inheritance tax is not a claim "against the estate" and consequently, even though a final settlement acts as a judgment that all claims against the estate have been presented, the inheritance tax is not barred thereby. (2) We are not reopening the assessment of 1905. That assessment related only to a devise of a ten thousand dollar piece of real estate to Joseph Bernero and to a bequest of five hundred dollars in cash to Louisa Gazzolo. We have no desire to appeal from that assessment, and so far as the items therein contained are concerned they are satisfactory to us. In this proceeding we are not attempting to assess the tax on "the same property" which was assessed in 1905. If the interests now sought to be assessed were taxable at the time of the original appraisal, it might be properly contended that no assessment could now be made; but inasmuch as they were not subject to the tax at that time the State clearly has a right to now appraise the same. Morgan v. Cowie, 63 N. Y. Supp. 608; Morgan v. Warner, 45 N. Y. App. Div. 424, 60 N. Y. Supp. 963, affirmed in 162 N. Y. 612; Matter of Kelley, 60 N. Y. Supp. 1005; In re Silliman, 175

N. Y. 513; Matter of Conley, 77 N. Y. Supp. 1032; Matter of Smith, 35 N. Y. Supp. 701. (3) Conceding that Louis Bernero, Jr., has legal standing to maintain the two suits which he has brought, this property would still be subject to the payment of a collateral inheritance tax, as our statute does not exempt from the payment of a tax the children of an adopted child. Since the property is legally subject to the payment of a tax, even if it should be paid by the appellants, and Louis Bernero, Jr., should be successful in his suit to quiet title, the appellants would have a lien upon the property for the amount of the tax paid by them, and any court of equity would require him to refund the taxes paid with legal interest before title would be decreed in him. Sec. 310, R. S. 1909, expressly covers a case similar to the one at bar.

WILLIAMS, J.—This proceeding was originally instituted in the probate court of the city of St. Louis on the 25th day of January, 1912. After judgment in the probate court the proceeding was duly appealed to the circuit court of the city of St. Louis; which court, on December 6, 1915, entered its judgment fixing and assessing collateral inheritance taxes in the total sum of $11,-572.03.

That portion of the judgment assessing the tax is as follows:

It is therefore ordered, adjudged and decreed by the court that the parties liable for a collateral inheritance tax upon the transfer of interest in the real estate herein described, the amounts of their respective interests therein, and the amount of tax which said parties are liable for on their respective interests are as follows, to-wit:

| Parties Liable as Life-Tenants. | Cash Value of Interest. | Amount of Tax |
|---|---|---|
| Joseph Longinotti, ..............$ | 19,142.72 | $ 957.13 |
| Ida Longinotti, ................... | 19,454.20 | 972.71 |
| Theresa L. Goodwin ........... | 19,775.25 | 988.76 |
| Louis Longinotti, .............. | 19,945.30 | 997.26 |
| Laura Longinotti, .............. | 20,484.26 | 1,024 21 |
| Florence Longinotti, ........... | 20,865.28 | 1,043.27 |
| Mary Longinotti, .....·......... | 21,081.27 | 1,054.07 |
| Adele Longinotti, ............... | 21,586.06 | 1,079.31 |

In re Bernero Estate.

| | | |
|---|---|---|
| Catherine Longinotti, ........... | 22,789.87 | 1,129.50 |
| Leo Longinotti, ................. | 21,899.42 | 1,094.98 |
| James Longinotti, .............. | 24,416.92 | 1,220.83 |
| | $231,440.55 | .$11,572.03 |

It is still further ordered, adjudged and decreed by the court that said taxes be, and they are hereby assessed upon the succession to the following described real estate situated in the city of St. Louis, Missouri, to-wit:    (Then follows a description of the property.)

That the said parties liable for said tax as aforesaid shall pay the same upon their respective interests to the collector of revenue of the city of St. Louis, Missouri, together with interest upon the tax assessed against each of them respectively, at the rate of one per cent per month from July 15, 1911, to the date of payment, together with the costs of this proceeding, and said taxes so assessed are hereby adjudged to be a first lien in favor of the State of Missouri upon the respective interest of said parties in and to said described real estate;  but the payment by any one or more of said parties of the amount of tax, interest and cost, against his or their respective interests, shall operate to discharge the lien of the State of Missouri upon such interest so paying the tax, without effecting its lien as against the interest or interests of those of said parties, if any, who do not voluntarily pay the amount of tax assessed against them.

An appeal was duly taken by the above named persons to this court.

The case was tried below upon an agreed statement of facts (comprising fifty pages of the printed record here) and some parol testimony. The important facts necessary to an understanding of the issues may be summarized as follows:

Louis Bernero, Sr., (in whose estate this proceeding is attempted to be had), died testate in St. Louis, August 8, 1904, seized of the fee simple title to considerable real estate, including a five-story business building known as No. 902 Washington Avenue (the same being the property involved in this proceeding). For brevity we will hereinafter refer to said property as the Washington Avenue property. At his death he left surviving him his wife, Theresa Bernero, and a nephew, Manuel Bernero, referred to in the will as an adopted son but who (according to the agreed statement of facts)   had   never been, by deed, adopted by the said Louis Bernero, Sr.

Disposition of said Washington Avenue property, by clause five of the will of Louis Bernero, Sr., was made as follows:

"I give and devise unto my beloved wife Theresa Bernero [here the Washington Avenue property is described] to have and enjoy for and during the term of her natural life, and at the time of her death the same to pass to our adopted son, Manuello Bernero, if he shall survive her, to have and enjoy during his natural life, and at his decease to pass to and vest in fee in his children, if any he have, or their descendants, but in default or failure of such direct heirs, children or grandchildren him surviving then at the time of his death the title to said realty in fee shall pass to and vest in my right heirs; if, however, my said wife shall survive said Manuello, then she, said Theresa Bernero, is hereby empowered to devise said realty as she shall see fit, or if she shall fail to make such testamentary disposition of same, then said realty, upon her death, shall vest in my right heirs, if she shall survive said Manuello; I authorize and empower my said wife during her lifetime, and if said Manuello shall survive her and enter upon the enjoyment of said realty, then said Manuello, during his lifetime, to lease said realty thus bequeathed to them for life as aforesaid, successively, on such terms as they severally deem proper, each exercising such right during her or his life tenancy, for leasehold periods not exceeding twenty-five years each."

Administration was had upon the estate of Louis Bernero, Sr., final settlement therein having been made on December 14, 1908. During the process of administration, an assessment of collateral inheritance taxes was made upon said estate, but no such tax was assessed in connection with the devise of the Washington Avenue property now involved.

On April 4, 1910, Manuel Bernero died and left surviving him one child, Louis Bernero, Jr.

On July 15, 1911, Theresa Bernero (wife of testator) died testate and in her will exercised the power of appointment given her by her husband's will over the Washington Avenue property in the following manner:

Clause eleven of will of Theresa Bernero:

"I give and devise to said St. Louis Trust Company the following real estate [here follows a description of the Washington Avenue property].

"To Have and To Hold the same as trustee upon the trusts and subject to the conditions following, that is to say:

"Said Trust Company, and its successor or successors in trust, shall have full power to take possession of, hold, and manage the above described real estate, in trust, however, for the equal use and benefit of all the children of my sister, Clotilda Longinotti, wife of Joseph Longinotti, for and during the natural lives of such of said children as may be living at the time of my decease, and until the death of the last survivor thereof. At present there are eleven children, namely, Joseph, Ida, Theresa, Florence, Laura, Mary, Adele, Leo, Catherine and James Longinotti; but it is my intention that this trust shall be for the equal benefit of all of the children of my said sister, whether they be living at the time of my decease or born thereafter, and for the descendants of any of said children who may have died leaving issue, such descendants taking *per stirpes* and not *per capita.* I direct, however, that the trust herein created shall cease and determine upon the death of the last survivor of said children who may be living at the time of my decease.

"Said Trust Company, as such trustee, shall be authorized to rent or lease said real estate and to improve the same, and for that purpose to encumber the same in such manner and upon such terms as in the judgment of said trustee shall be for the bests interests of the trust estate herein and hereby created for the use and benefit of my said nephews and nieces.

"After paying the necessary expenses incident to the care and management of said real estate, including a reasonable compensation for its services, said trustee shall pay and distribute the net revenue derived therefrom, share and share alike among said children of my sister, Clothilda Longinotti, and to the descendants of any of said children who may have died leaving children, such descendants taking the parent's share, paying the same directly to such children or other descendants as shall have reached the age of majority, and paying to the guardian of the minor children or other descendants or expending for their several benefits their respective share, according to the discretion of said trustee.

"Upon the death of the last survivor of my said sister's children who shall survive me, the trust herein created shall cease and the property then constituting the trust estate shall pass to the then living descendants of my said sister, Clotilda Longinotti, share and share alike, such descendants taking *per stirpes* and not *per capita.*

"Said St. Louis Union Trust Company, and its successor or successors in trust, shall be authorized to sell and convey the fee simple title to said property at any time and upon such terms as in its judgment would be for the best interests of said trust estate, provided such sale meets with the approval in writing of a majority in number of my said nephews and nieces who are at the time of lawful age.

"In the event of such sale, said trustee shall hold the proceeds thereof as representing the *corpus* or principal fund of the trust estate, with power to reinvest the same in such other property or securities as in the judgment of said trustee will yield a safe and regular income, and from time to time change investments and make new investments as may be necessary for the proper preservation of the trust estate, the income derived therefrom to be divided and paid out in like manner as the net income from the real estate.

"The trustee herein is authorized out of the income derived from said real estate from time to time, as in its judgment may be necessary, to create a sinking fund out of the annual income for the purpose of making needed alterations and repairs in connection with the improvements located thereon or said trustee may from time to time make such repairs, alterations or improvements in connection with said real estate and borrow the money therefor, providing a fund to repay said borrowed money out of the income thereafter to be collected from said real estate. Any loan so made by said trustee shall be a charge against the income derived therefrom as well as against the property itself. In making deductions from the income for the purpose of repayment of borrowed funds or for the purpose of creating a fund to repair or improve the property, the trustee shall exercise its own discretion as to the amounts of such deductions and when the same should be made.

"If at any time during the continuance of the trust herein created, the corporate charter of said St. Louis Union Trust Company shall expire by limitation of time, and a new corporation of like powers shall be organized, pursuant to the laws of the State of Missouri relating thereto, for the purpose of continuing the business thereof, then I direct that immediately upon its organization, such new corporation shall be and become the trustee of the trust herein created in place and instead of said expiring corporation, and shall be vested with all the rights, titles, estate, interest, powers and duties of such trustee, as herein set out, without the necessity of any further act or conveyance."

On July 19, 1911, the St. Louis Union Trust Company, as executor under said will, was granted letters testamentary upon the estate of said Theresa Bernero, deceased. Thereafter and on March 20, 1912 (and before the assessment of collateral inheritance taxes were assessed in the present proceeding), Louis Bernero, Jr., above mentioned, through his curatrix, instituted in the circuit court of the city of St. Louis a suit to contest the validity of the will of said Theresa L. Bernero, deceased. That suit is still pending, one phase thereof having

reached this court. [Bernero v. Goodwin, 267 Mo. 427.] In the above will contest suit the contestant Louis Bernero, Jr., claims to be the sole heir at law of Theresa L. Bernero, deceased. The appellants here are parties defendant to said will contest.

On August 30, 1911, said Louis Bernero, Jr., also filed in the circuit court of the city of St. Louis an action to quiet the title to the Washington Avenue property, claiming the entire interest therein by virtue of the will of Louis Bernero, Sr., deceased. That action also remains undisposed of, one phase thereof having reached this court. [See State ex rel. Bernero v. McQuillin, 246 Mo. 517.]

I. Appellants contend that the judgment must be reversed because (1) the probate court, after final settlement of the Louis Bernero, Sr., estate, had no jurisdiction to entertain the present proceedings; (2) the first assessment of collateral inheritance taxes in said estate made during the pendency of administration of the estate now operates as *res adjudicata* of the present right to an assessment and that further assessments are therefore barred. These points in their order.

The administration of the estate of Louis Bernero, Sr., was closed in December, 1908. This proceeding was not instituted in the probate court until January, 1912.

Jurisdiction. Did the probate court have jurisdiction to entertain this proceeding? The determination of this question involves the construction of our collateral inheritance tax law. After a careful consideration of the same, we have reached the conclusion that this point should be ruled against appellant's contention.

Strictly speaking, the assessment of collateral inheritance taxes does not directly involve the administration of a decedent's estate. The proceeding is one, not against the property of a decedent; it is not a claim against the estate as such, but is against the interest or property right which the heir, legatee, devisee, etc., has in the property formerly held by the decedent. [Sec.

309, R. S. 1909; State ex rel. v. Henderson, 160 Mo. 190, l. c. 215.]

This being true, unless the statute otherwise directs, no good reason would appear limiting the right to make such assessment to such time as the decedent's estate was in the course of administration. Appellants contend that the language of section 326, Revised Statutes 1909, to-wit: "The court of probate having . . . juris-diction of the settlement of the estate of the decedent, shall have jurisdiction to hear and determine all ques-tions in relation to said tax that may arise," etc., does so limit the jurisdiction of the probate court; that the phrase "having jurisdiction of the settlement of the es-tate" means "*then exercising jurisdiction* of the settle-ment of the estate" and that once the estate is closed its jurisdiction over collateral inheritance tax matters against property formerly owned by such decedent is also at an end. We are unable to agree with this con-struction. We are of the opinion that the phrase "the court of probate having jurisdiction of the settlement of the estate" simply means the particular court of pro-bate in any instant case upon which the law has confer-red the right of administering the estate.

Now as to point two above: At the time of the first assessment of a collateral inheritance tax against any of the property formerly owned by decedent it was not then definitely known, nor could it be definitely foreseen, that any of the property involved in the present proceeding would ever be subject to such a tax. As the property then stood it was sub-ject to a life estate in decedent's wife with power of ap-pointment in her, under which upon the happening of cer-tain contingencies, she could, by will, dispose of this very property. As pointed out by the learned attorney for the respondent, if she had exercised such power of appoint-ment, by devising the property to some educational, char-itable or religious purpose in this State, the property would not have been subject to the assessment of the tax. [Sec. 309, R. S. 1909.] In other words, until a valid exercise of said power of appointment had been

Res Adjudicata.

made or until the contingency of the possible exercise of the same should become removed it could not be foreseen that the property would be subject to a tax.

Under the facts as disclosed by this record, whether the wife would or would not undertake to exercise such power of appointment, could not have been known until her death on July 15, 1911, which was long after the first assessment was made. Under such conditions the former proceeding against the other property formerly owned by decedent then known to be subject to such a tax, would certainly not operate as *res adjudicata* as to the right to tax the present property not involved for the reason that it could not have been involved, as explained above, in the original proceeding. As to whether it would have been *res adjudicata* if the present property had then been subject to such an assessment, we do not decide, because not here involved.

II. The most serious question presented is whether or not the court should have proceeded, over the objection of appellants, to make an assessment so long as the will contest suit was pending.

The rights and interests of the appellants in said property, so far as this record discloses, are contingent upon the validity of said will and its ultimate establishment as a will. If the proponents of said will (parties defendant in the will contest, including among others the appellants herein) fail to establish said will, then the executed power of appointment therein likewise fails and the property here involved will go to someone other than these appellants for aught the present record discloses.

Assessment Pending Will Contest.

A will contest suit is a unique proceeding. Once properly instituted the suit cannot be dismissed by the contestant alone, but must proceed to the final judgment of will or no will. It (a suit to contest the will) "has the effect to vacate the action of the probate court and leave the question *devisavit vel non* to be tried anew in the circuit court," where the burden of proving its due execution is upon the proponents of the will. [Hogan v.

Hinchey, 195 Mo. 527, l. c. 532.] And until the will contest is determined, it cannot be known who will share in the estate. Since *it is the interest of the devisee, etc.,* and not the property of the estate, that is subject to such a tax, should a person be compelled to defend against the assessment of such a tax until it becomes known that he will have an interest in such property subject to such tax? In other words, is he not entitled to his day in court after it becomes definitely known that he will have an interest subject to the tax? We think he is so entitled.

In order that all questions of limitations might be kept out of the case, and as a matter of abundant precaution, we can see no particular harm resulting in having the proceeding timely instituted; but when so instituted and it develops that a will contest is pending which involves the very right to the property of the person against whose interest the tax is sought to be assessed, we think the further proceeding in the matter should stand postponed until the will contest is ended and it becomes known whose interest will be subject to such a tax.

This proposition appears to have been squarely passed upon by the New York Court of Appeals, by an unanimous opinion, in the case of Matter of Westurn, 152 N. Y. 93, l. c. 99-100. So far as we have been able to discover it is the only reported case upon the subject. For that reason we feel justified in quoting therefrom at some length.

"The litigation over the probate of the will of the decedent was finally terminated by the decision of this court, May 21, 1895, in favor of the contestants. It was not until the final determination of the controversy, by the judgment of this court, that it could be known whether the property of the decedent passed under his will or as in case of intestacy, and, until this fact was ascertained, it was impracticable to proceed to fix the transfer tax under the act of 1892, or the prior statutes, since the ascertainment of the persons entitled to the property of a decedent must precede the imposition of

any tax. This has been the uniform construction given by this court to the Transfer Tax Acts. It has been steadily maintained that the tax, while in a general sense a tax on the property of a decedent, is, in its essential nature, under the legislation on the subject, a tax on the right to succession to the property, imposed upon and collectible out of each specific share or interest given by will or derived under the Statutes of Descent or Distribution, and limited as to each share or interest to its value, with a super-added personal liability for the payment of the tax by the person taking the interest. The tax is computed, not on the aggregate valuation of the whole estate of the decedent considered as the unit for taxation, but on the value of the separate interests into which it is divided by the will or by the statute laws of the State, and is a charge against each share or interest according to its value, and against the person entitled thereto. The principle that the tax is a succession tax imposed as a burden on each person claiming succession, measured by the value of his interest, and collectible out of his interest only, was reaffirmed in the case In re Hoffman, 143 N. Y. 327, arising after the passage of the Transfer Tax Act of 1892, and the court rejected the contention that the principle of construction to which we have adverted, established under the acts of 1885 and 1887, was not applicable to the act of 1892. The court has applied this rule of construction to cases of future contingent interests given by will, which might never become vested, and also to cases where, although there may have been a technical vesting of a future estate, the estate was liable to be defeated before it came into actual enjoyment. [Matter of Curtis, 142 N. Y. 219; Matter of Roosevelt, 143 N. Y. 120; Matter of Hoffman, supra; see, also, In re Cager, 111 N. Y. 343.]

"The delay, therefore, in fixing the tax in the present case, awaiting the result of the contest over the will, was inevitable, and in no way chargeable to the heirs or next of kin, whose rights were first judicially ascertained and finally settled by the judgment in this court declaring the will to be void."

The above case has also been cited with approval in the late work of Blakemore and Bancroft on Inheritance Taxes, section 382.

We are, therefore, of the opinion that the assessment of said tax against the alleged interest of these appellants should have been postponed until the final determination of the will contest suit and that the court erroneously made the assessment at the time it did under the above conditions.

The judgment is therefore reversed and the cause is remanded. All concur.