consolidate counties under the constitution as framed, it is apparent that, by the restrictions to jurisdiction contained in the section under consideration, territorial limitations were not intended. At the time that the constitution in question was framed, the subject of the consolidation, under one municipal government, of the counties of New York, Kings, Richmond, part of Queens, and part of Westchester, was being agitated; and an act had been passed by the legislature requiring the submission of this proposed consolidation at the same time when the constitution then being framed should be submitted for adoption. The framers of the constitution must therefore have had in mind the possibility of the organization of this new city, and that as a part of the local government of such new corporation a local court must be established; and it would be unreasonable to suppose that they intended to prohibit the establishment of a court which had been held by the highest court of the state to be one of the functions of said local government, unless such intention was manifested by unequivocal and unmistakable language. It is possible, as we think has been shown, to give full effect to all the limitations embraced by the article in question, without nullifying the power conferred by the first paragraph of the section, as interpreted by the court of last resort. It may be that, in the act creating the municipal court, jurisdiction may have been attempted to be conferred which contravenes the constitution; but there is no infirmity in the scheme creating the court which renders the whole of the provision in respect thereto void and of no effect.

The judgment should be affirmed, with costs. All concur.

<hr/>

(38 App. Div. 350.)

### In re SCHERMERHORN'S ESTATE.

(Supreme Court, Appellate Division, First Department.  March 24, 1899.)

SURROGATE'S COURT—ORDERS.

The petition of an executor to the surrogate's court alleged the making of an order by it fixing at a certain amount the transfer tax to which testator's estate was subject; that petitioner paid said sum; that said order was made on the report of an appraiser, which included, as part of the property of the estate subject to payment of the tax, securities of foreign corporations,—and prayed for an order that no transfer tax was legally payable on said securities, and that the transfer tax thereon was erroneously made. *Held*, that an order in accordance therewith was without jurisdiction; there being only provisions authorizing the surrogate to modify and set aside adjudications made by him, and others for reviewing a determination of his by appeal.

Appeal from surrogate's court, New York county.

In the matter of the estate of Edmund H. Schermerhorn, deceased. Petition was filed by William C. Schermerhorn, executor of deceased, alleging an order by the surrogate's court, on the report of an appraiser, fixing the amount of transfer tax payable on the estate of deceased, and that said report included, as part of the estate subject to payment of such tax, securities of foreign corporations, and praying for an order that no transfer tax was legally payable thereon, and that the amount paid thereon was erroneously paid. From an order

that the appraisal, so far as it included such securities, and the payment of the tax, so far as it was based on such appraisal, were erroneous, the comptrollers of the city and state of New York appeal. Reversed.

The petition of the executor was as follows:

The petition of William C. Schermerhorn respectfully shows: (1) That your petitioner is the sole acting executor of the last will and testament of Edmund H. Schermerhorn, deceased. (2) That the said Edmund H. Schermerhorn was at the time of his death, to wit, on October 1, 1891, a resident of Newport, in the state of Rhode Island, and that the said Edmund H. Schermerhorn had been for many years prior to said 1st day of October, 1891, a nonresident of the state of New York, and a resident of said Newport, in the state of Rhode Island. (3) That heretofore, and on or about the 13th day of March, 1893, an order was made by this court fixing the amount of the transfer tax to which the estate of said deceased was subject at the sum of thirty-seven thousand five hundred and eighty-five $^{81}/_{100}$ ($37,585.81) dollars. (4) That said order was made by this court upon the report of one D. Van Schaick, who had been prior thereto appointed by this court appraiser, in pursuance of chapter 713 of the Laws of 1887, as amended by chapter 215 of the Laws of 1891, and chapter 399 of the Laws of 1892, for the purpose of appraising said estate, and fixing the amount of the tax due upon the different interests therein. (5) That said order and report are on file in the office of the clerk of the surrogate's court of the county of New York. (6) That on the 17th day of March, 1893, your petitioner, as such executor, paid to Theodore W. Myers, the comptroller of the city of New York at that time, the said sum of thirty-seven thousand five hundred and eighty-five $^{81}/_{100}$ ($37,585.81) dollars. (7) That said appraiser, in his report, appraised and valued, as part of the property of said estate subject to the payment of said tax, securities of foreign corporations belonging to the said decedent at the time of his death, which are set forth more particularly in Schedule A, annexed to this petition, and that said securities were so included by said appraiser, and appraised and valued by him for the purpose of assessing such tax, against the protest of this petitioner, and against the objection of this petitioner and his attorneys. (8) That your petitioner insisted, upon said appraisement, that the said securities mentioned in said schedule hereto annexed were illegally and erroneously included in the property subject to taxation under the said transfer tax, and that on or about the 24th day of November, 1894, the court of appeals of this state decided (In re James, 144 N. Y. 6, 38 N. E. 961) that the act under which the said tax was imposed upon the estate of said deceased did not, for the purpose of taxation, include any personal property that was not within this state, either in fact, or because of the domicile here of its owner, and that said court of appeals in said case expressly held and decided that the stocks and bonds of foreign corporations were not property here, within the meaning of the said law, and so could not properly be included in the valuation of the testator's estate here for purposes of taxation under said act.   *   *   *

Your petitioner therefore prays for an order or decree of this court that (1) no transfer tax was legally payable upon the said securities of foreign corporations, hereinbefore mentioned, belonging to the said decedent at the time of his death; (2) that the transfer tax, amounting to the sum of nineteen thousand six hundred and sixty-four dollars and one cent ($19,664.01), heretofore paid upon said securities to the comptroller of the city of New York on the 17th day of March, 1893, was erroneously paid; and that an order may issue from this court requiring the comptroller of the state of New York to appear, at a time and place to be therein mentioned, and show cause why a decree should not be made, granting the relief herein prayed for, or why your petitioner should not have such other and further relief as to the court may seem just.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Emmet R. Olcott, for appellant.

E. C. Boardman, for respondent.

VAN BRUNT, P. J. We fail to find, and our attention has not been called to, any authority conferred upon the surrogate to make such an order as the one appealed from. There are provisions for reviewing the determination of the surrogate by appeal, and there are also provisions authorizing the surrogate, under certain circumstances, to modify and set aside adjudications which may have been made by him. The application made to the surrogate in this case falls under neither of these heads, and the relief granted is not embraced within any power which the surrogate possesses. The order appealed from is simply a decretal order, declaring erroneous a previous order, and that a payment in pursuance of the previous order was made in error. The order referred to remained unreversed, unmodified, and of full effect, and consequently had the same force that it had prior to this attempt upon the part of the surrogate to decree it erroneous. If an application had been made to the surrogate to modify the order, different questions might have arisen. But it is difficult to see how even such a motion could now avail; the time to appeal from the order having expired, and it having become final and conclusive.

We think, therefore, that the surrogate was entirely without jurisdiction to make the order appealed from, and that the same should be reversed, with costs, and the motion of the petitioner denied, with costs. All concur.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.