(29 Misc. Rep. 404.)

## In re RICE'S ESTATE.

(Surrogate's Court, New York County. November, 1899.)

1. TRANSFER TAX—APPRAISEMENT.

Under the transfer tax act, authorizing appraisals "as often as occasion may require," reappraisements are contemplated to reach property omitted in former appraisals, and not property previously appraised, which has increased in value, since the tax is to be measured by the value of the estate at the time of the transfer of title, and not at the time of transfer of possession.

2. SAME—CONCLUSIVENESS OF SURROGATE'S ORDER.

Since appraisement proceedings under the transfer tax act furnish opportunity for full inquiry as to the value of the property at the death of the owner, the surrogate's order assessing the tax, entered on the report of the appraiser, and unappealed from, is conclusive, and the property cannot be afterwards reappraised.

3. SAME.

A surrogate's order entered on the report of the appraiser, under the transfer tax act, is conclusive as to the allowance made for debts and expenses of administration, though the former are afterwards defeated, and the latter reduced below the estimate allowed.

Appeals from appraisal for transfer tax.

Matter of the appraisal for taxation of the estate of Charles Allen Thorndike Rice, deceased. Appeal by the executor and others from

an order of the commissioner assessing and fixing the transfer tax.
Reversed.

Parsons, Shepard & Ogden, for appellants.
Emmet R. Olcott, for appellee.

VARNUM, S. This matter was argued before and submitted to
Judge ARNOLD, but was not decided by him. It was reargued
orally before me, and briefs submitted. The appeals herein are
from an order entered April 28, 1894, assessing and fixing the trans-
fer tax upon an appraisal had under an ex parte order granted on
the application of the state comptroller. Proceedings had been
had theretofore in which there was an appraisal of the estate for
the purpose of taxation on the facts presented by the personal rep-
resentative of the decedent. Since such appraisal, and by reason
of facts that thereafter occurred, it was found that the amount
appraised did not represent the entire sum of the property of the
deceased; and it is claimed that there is now due on said estate
a further tax upon property not covered by the former appraise-
ment. Upon the first appraisement all the property then known to
the executor was appraised, its value and the taxable interest there-
in ascertained and reported by the appraiser, an order duly en-
tered upon the basis of such report, and the tax was paid over two
years prior to the filing of the petition in the present proceeding.
No allegations of fraud, mistake, or concealment in connection with
the first appraisal are made; nor has any application been made
to set aside such appraisement, or to open the proceedings and re-
mit the case to the appraisers. The law provides that the surro-
gate shall appoint some competent person as appraiser "as often
as occasion may require," in order to fix the value of property of
persons whose estates shall be subject to the payment of tax. The
object of successive appraisals as thus provided for is evidently to
collect the tax on the whole taxable estate, and, where all the as-
sets have been appraised and the tax thereon fixed, to cover any
omission by additional or supplemental appraisals when such omis-
sions are discovered. The petition herein upon its face is an ap-
plication for a new and not a reappraisement, for its purpose is
therein stated to be to obtain the appointment of an appraiser of
"all said estate or property on which the said tax has not already
been paid." Upon the new appraisement it was found that there
was some property of the decedent subject to tax which had not
been appraised in the previous proceeding; and an appraisal there-
of was had, which was entirely proper, and as to which no ques-
tion has been raised. Instead of confining himself to this property,
however, the appraiser filed a report setting out an appraisal of the
whole estate, including, not only the newly-discovered property, but
property which had been the subject of the former appraisal, as to
some portion of which he adopted the valuation previously arrived
at, and as to two specific items, to wit, certain pictures and a for-
eign newspaper enterprise, which had on the first appraisal been
valued, the former at $1,000 and the other as without value, he in-

creased the valuations. The ground upon which the increase was made was that the executor had, since the former appraisal, actually received for such properties the respective sums at which they were valued in the new appraisal. The contention that the transfer tax can be based on any such later increase in value cannot be sustained. The transfer tax is to be measured by the value of the estate transferred at the time of the transfer of the title, and not its value at the time of transfer of possession. Section 2 of the transfer tax act of 1892 provides that an appraisal of property for the purposes of the act shall be made immediately after the death of the decedent, at what was the fair and clear market value thereof at the time of the death of the decedent, and the same provision was contained in the statute in force at the time of this decedent's death. In Re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401, the court of appeals said:

"The transfers take place necessarily at the moment of death, for the will, on the one hand, and the intestate laws, on the other, operate and speak from that date."

And in Re Davis' Estate, 149 N. Y. 539, 44 N. E. 185, that:

"The transfer or inheritance tax is not a tax upon property, but upon the right of succession, and hence the true test of value by which the tax is to be measured is the value of the estate at the time of transfer of title, and not its value at the time of the transfer of possession; and, in estimating the value of the estate for purpose of taxation under the transfer act, it must be appraised as of the time of the death of the testator, when the title passes, and not as of the time when the possession passed; and, where the estate transferred has a fixed or ascertained value at the time of the death of the testator or intestate, the value at that time must be the basis of the appraisal, whenever made."

See, also, In re Vassar, 127 N. Y. 1, 27 N. E. 394; Dos P. Col. Inh. Tax, 148.

The appraisement proceeding furnishes an opportunity to the parties interested in the estate, on the one hand, and the state, on the other, to inquire fully as to the value of the property at the time of the decedent's death, and to obtain and present such testimony as may aid in the ascertainment of such value. Upon the proofs thus taken the appraiser makes his report, and the surrogate enters an order assessing and fixing the tax. This order is an adjudication in respect to the liabilities thereby fixed, and, unless an appeal is taken therefrom, is conclusive on all parties thereto. In re Wolfe, 137 N. Y. 205, 33 N. E. 156; In re Smith's Estate (Sur.) 23 N. Y. Supp. 762; In re Astor's Estate (Sur.) 2 N. Y. Supp. 630. The original appraisement of the decedent's interest in the journal known as "Le Matin" as of no value cannot now be disturbed, notwithstanding a considerable sum was afterwards realized therefrom; and the same rule would apply as to the surplus proceeds of the sale of certain pictures above their appraised value, unless, as is suggested in the papers, the executor has made some special concession or agreement that the latter valuation thereof may stand, less certain additional expenses incurred in making the sale aforesaid.

The action of the appraiser is also objected to on the ground that on the second appraisal he reduced the allowance made by him on the first for debts due by the decedent and for expenses of administration, for the reason, apparently, that certain of the claims previously allowed had been sued for by the alleged creditors, and defeated by the executor. In other cases the claims were disputed by the executor, and had never been prosecuted by the creditors. As to the expenses, they had turned out to be less than previously estimated. With respect to this question as to the deductions allowed for debts and expenses, a novel and more serious question arises. In re Westurn's Estate, 152 N. Y. 93, 46 N. E. 315, says:

"The principle that, in administering the statute, debts, commissions, and expenses of administration should be deducted in ascertaining taxable values, accords with the general practice, and is permitted by a just construction of the law."

See, also, In re Gould, 19 App. Div. 352, 359, 46 N. Y. Supp. 506, affirmed on this point by the opinion of the court of appeals in 156 N. Y. 423, 426, 51 N. E. 287.

As the proceedings to fix and collect the transfer tax may be taken at any stage in the administration of the estate, it constantly happens that full information in respect to the debts is not at hand at the time the appraisement is made, nor is it possible to arrive at the exact amount of the expenses which have been or may be incurred in such administration; and it has been the practice, acting upon the best information procurable, to estimate the probable amount of the debts and expenses, where the exact sum was not ascertainable. In the present case it is conceded that several claims which were included in the estimate made as to the amount of debts have not been paid, and by reason of the dismissal of suits brought thereon against the executor, and for other reasons, can never be collected from the estate; and it is also claimed on the part of the appellant that the actual expense incurred in the administration exceeded the amount allowed by the appraiser to cover the same. It is evident that where claims are allowed and deducted by the appraiser as debts of the estate, and they turn out not to be such, the amount represented by such allowance has not, as. a matter of fact, been taxed, as it should equitably have been, in accordance with the intentions of the legislature as expressed in the law. It is nevertheless insisted by the executor that the order fixing the tax on the basis of the appraiser's allowances is conclusive as to these deductions, and that no question in respect to the same is now open for consideration. I am of opinion that he is correct in this contention, and that the matter is res adjudicata. Code Civ. Proc. § 2481, subd. 6; In re Wolfe, 137 N. Y. 205, 33 N. E. 156; In re Tilden's Ex'rs, 98 N. Y. 434; In re Humfreville, 8 App. Div. 312, 40 N. Y. Supp. 939; In re Bruce's Estate (Sur.) 59 N. Y. Supp. 1083; and my own decisions in Re Wallace, 28 Misc. Rep. 603, 59 N. Y. Supp. 1084, and Re Monteith's Estate, 27 Misc. Rep. 163, 58 N. Y. Supp. 379. Moreover, in the case under consideration, if the appraiser's decision on this point be sustained, it would, in effect, be declaring erroneous in part the order fixing the tax on

the first appraisal, while that order still remains unreversed, unmodified, and in full effect; and this is not within my powers as surrogate. In re Schermerhorn's Estate, 38 App. Div. 350, 57 N. Y. Supp. 26. Admitting, as has been claimed, that in this particular case the state is losing the tax upon certain property which, as it now appears, was properly the subject of taxation, it is better that this should be the case than that a dangerous precedent be established. Such cases can readily be guarded against in the future by insisting on the appraisal upon the nondeduction of claims of a doubtful and uncertain character. This could be done without substantial injury to the estate of the decedent, since, in the event that said claims prove valid debts, a proportional refund of the tax paid can be obtained under the provisions of section 225 of the tax law, and similar sections in prior acts, or the question as to the taxability of that part of the estate offset by a disputed claim might be reserved until the validity or invalidity of such claim is definitely established. In Re Westurn's Estate, 152 N. Y. 93, 101, 46 N. E. 315, a suggestion is made as to the propriety and mode of such a disposition. It is there said that:

"In many cases of large estates it would be perfectly safe for an appraisal to proceed before an accounting, and for the surrogate to fix the tax on legacies, or even on the residuary interests; reserving from the appraisal at that time a sum adequate to meet all probable debts and charges, and leaving the adjustment of the tax on the part reserved for a future occasion."

In my own judgment, where deductions for doubtful or uncertain debts and claims are allowed, it would also be sufficient to have an appropriate recital in the appraiser's report and the order of taxation to the effect that the deduction so made is without prejudice to the right of the state to a further appraisal and taxation of the whole or any part thereof, in the event that it should afterwards appear that the items so deducted are not valid claims, or are less than the estimated valuation at which they were allowed in reduction of the total assets of the estate.

Submit order in accordance with above views.