In the Matter of the Appraisal of the Property of CHARLES ALLEN THORNDIKE RICE, Deceased, under the Act in Relation to Taxable Transfers of Property.

THE COMPTROLLER OF THE CITY OF NEW YORK, Appellant; CHARLES U. COTTING, Executor, etc., of CHARLES ALLEN THORNDIKE RICE, Deceased, Respondent.

| 56 | 253 |
| 38 Mis | [1]469 |
| 56 | 253 |
| 82 | 109 |
| 82 | [3]110 |
| 82 | [3]111 |

*Transfer tax — new appraisal — an increased valuation of property already appraised and the rejection of claims for debts already deducted are improper — such right should be reserved.*

On an application for a new appraisal, for the purposes of the transfer tax upon an estate, the appraiser is not authorized to reappraise property included in the original appraisal at a higher valuation than that fixed on such appraisal, to wit, at the amount realized by the executor of the estate upon the sale thereof, nor to reduce the allowance made upon the first appraisal for debts due by the decedent and for expenses of administration, although some of such alleged debts have been successfully disputed by the executor, and the expenses of administration have proved less than was estimated.

The order fixing the tax on the basis of the appraisal originally made is conclusive upon such matters until it is reversed or modified.

Where, on an original appraisal, deductions for doubtful or uncertain debts or claims are allowed, the appraiser's report and the order of taxation should contain a recital to the effect that the deduction is made without prejudice to the right of the State to a further appraisal and taxation of the whole or any part thereof, in the event that it shall appear that the items so deducted are not valid claims or are of less value than the amount at which they were allowed in reduction of the total assets of the estate.

APPEAL by the comptroller of the city of New York from an order of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 6th day of December, 1899, denying in some respects an application by the comptroller to increase the succession tax upon the estate of the testator as originally fixed by a former appraisement.

*Emmet R. Olcott*, for the appellant.

*John E. Parsons*, for the respondent.

Order affirmed, with ten dollars costs and disbursements, on opinion of the court below.

Present — VAN BRUNT, P. J., RUMSEY, PATTERSON, O'BRIEN and McLAUGHLIN, JJ.

The following is the opinion of the court below:

VARNUM, Surrogate:

This matter was argued before and submitted to Judge ARNOLD, but was not decided by him. It was reargued orally before me and briefs were submitted. The appeals herein are from an order entered April 28, 1894, assessing and fixing the transfer tax upon an appraisal had under an *ex parte* order granted on the application of the State Comptroller. Proceedings had been had theretofore in which there was an appraisal of the estate for the purpose of taxation on the facts presented by the personal representative of the decedent. Since such appraisal, and by reason of facts that thereafter occurred, it was found that the amount appraised did not represent the entire sum of the property of the deceased, and it is claimed that there is now due on said estate a further tax upon property not covered by the former appraisement. Upon the first appraisement all the property then known to the executor was appraised, its value and the taxable

interests therein ascertained and reported by the appraiser, an order duly entered upon the basis of such report, and the tax was paid over two years prior to the filing of the petition in the present proceeding. No allegations of fraud, mistake or concealment in connection with the first appraisal are made, nor has any application been made to set aside such appraisement or to open the proceedings and remit the case to the appraiser. The law (Laws of 1887, chap. 713, § 13) provides that the surrogate shall appoint some competent person as appraiser " as often as and whenever occasion may require," in order to fix the value of property of persons whose estates shall be subject to the payment of the tax. The object of successive appraisals as thus provided for is evidently to collect the tax on the whole taxable estate, and, where all the assets have been appraised and the tax thereon fixed, to cover any omission by additional or supplemental appraisals when such omissions are discovered. The petition herein upon its face is an application for a new and not a reappraisement, for its purpose is therein stated to be to obtain the appointment of an appraiser of " all said estate or property on which the said tax has not already been paid." Upon the new appraisement it was found that there was some property of the decedent subject to tax which had not been appraised in the previous proceeding, and an appraisal thereof was had, which was entirely proper and as to which no question has been raised. Instead of confining himself to this property, however, the appraiser filed a report setting out an appraisal of the whole estate, including not only the newly-discovered property, but property which had been the subject of the former appraisal, as to some portion of which he adopted the valuation previously arrived at, and as to two specific items, to wit, certain pictures and a foreign newspaper enterprise which had on the first appraisal been valued, the former at $1,000 and the other as without value, he increased the valuations. The ground upon which the increase was made was that the executor had, since the former appraisal, actually received for such properties the respective sums at which they were valued in the new appraisal. The contention that the transfer tax can be based on any such later increase in value cannot be sustained. The transfer tax is to be measured by the value of the estate transferred at the time of the transfer of the title, and not its value at the time of transfer

of possession. Section 2 of chapter 713 of the Laws of 1887, which was the statute in force at the time of Mr. Rice's death, provides that an appraisal of property for the purposes of the act shall be made immediately after the death of the decedent, at what was the fair and clear market value thereof at the time of the death of the decedent. Moreover, in *Matter of Seaman* (147 N. Y. 69) the Court of Appeals said : " The transfers take place necessarily at the moment of death, for the will on the one hand and the intestate laws on the other operate and speak from that date ;" and in *Matter of Davis* (149 N. Y. 539) that " the transfer or inheritance tax is not a tax upon property, but upon the right of succession, and, hence, the true test of value by which the tax is to be measured is the value of the estate at the time of the transfer of title, and not its value at the time of the transfer of possession." In ascertaining, therefore, the value of the estate for the purpose of taxation under the Transfer or Inheritance Tax Act, it must be appraised as of the time of the death of the testator, when the title passed, and not as of the time when the possession passed. As is likewise said in *Matter of Davis* (*ubi supra*), " Where the estate transferred has a fixed or ascertainable value at the time of the death of the * * * testator or intestate, the value at that time must be the basis of the appraisal whenever made." (See, also, *Matter of Vassar*, 127 N. Y. 1, and Dos Passos Col. Inh. Tax, 148.) The appraisement proceeding furnishes an opportunity to the parties interested in the estate, on the one hand, and the State on the other, to inquire fully as to the value of the property at the time of the decedent's death, and to obtain and present such testimony as may aid in the ascertainment of such value. Upon the proofs thus taken the appraiser makes his report and the surrogate enters an order assessing and fixing the tax. This order is an adjudication in respect to the liabilities thereby fixed, and unless an appeal is taken therefrom is conclusive on all parties thereto. (*Matter of Wolfe*, 137 N. Y. 205; *Matter of Smith's Estate*, 23 N. Y. Supp. 762; *Matter of Astor*, 6 Dem. 402.) The original appraisement of the decedent's interest in the journal known as *Le Matin* as of no value, cannot now be disturbed, notwithstanding a considerable sum was afterwards realized therefrom, and the same rule would apply as to the surplus proceeds of the sale of certain pictures above their

appraised value, unless, as is suggested in the papers, the executor has made some special concession or agreement that the latter valuation thereof may stand, less certain additional expenses incurred in making the sale aforesaid. The action of the appraiser is also objected to on the ground that on the second appraisal he reduced the allowance made by him on the first, for debts due by the decedent and for expenses of administration, for the reason, apparently, that certain of the claims previously allowed had been sued for by the alleged creditors and defeated by the executor. In other cases the claims were disputed by the executor and had never been prosecuted by the creditors. As to the expenses, they had turned out to be less than previously estimated. With respect to this question as to the deductions allowed for debts and expenses, a novel and more serious question arises. *Matter of Westurn* (152 N. Y. 93) says: " The principle that in administering the statute, debts, commissions and expenses of administration should be deducted in ascertaining taxable values, accords with the general practice and is permitted by a just construction of the law." (See, also, *Matter of Gould*, 19 App. Div. 352 at 359 ; affd. on this point by the opinion of the Court of Appeals, 156 N. Y. 423, 426.) As the proceedings to fix and collect the transfer tax may be taken at any stage in the administration of the estate, it constantly happens that full information in respect to the debts is not at hand at the time the appraisement is made, nor is it possible to arrive at the exact amount of the expenses which have been or may be incurred in such administration, and it has been the practice, acting upon the best information procurable, to estimate the probable amount of the debts and expenses where the exact sum was not ascertainable. In the present case it is conceded that several claims which were included in the estimate made as to the amount of debts have not been paid, and by reason of the dismissal of suits brought thereon against the executor, and for other reasons, can never be collected from the estate ; and it is also claimed on the part of the appellant that the actual expense incurred in the administration exceeded the amount allowed by the appraiser to cover the same. It is evident that where claims are allowed and deducted by the appraiser as debts of the estate, and they turn out not to be such, the amount represented by such allowance has not,

as a matter of fact, been taxed, as it should equitably have been, in accordance with the intentions of the Legislature as expressed in the law. It is, neverless, insisted by the executor that the order fixing the tax on the basis of the appraiser's allowances is conclusive as to these deductions, and that no question in respect to the same is now open for consideration. I am of opinion that he is correct in this contention, and that the matter is *res adjudicata.* (Code Civ. Proc. § 2481, subd. 6; *Matter of Wolfe,* 137 N. Y. 205; *Matter of Tilden,* 98 id. 434; *Matter of Humfreville,* 8 App. Div. 312; *Matter of Bruce,* Surr. Decs. 1896, p. 291; N. Y. L. J. May 19, 1896, and my own decisions in *Matter of Wallace,* 28 Misc. Rep. 603, and *Matter of Monteith,* 27 id. 163.) Moreover, in the case under consideration, if the appraiser's decision on this point be sustained, it would, in effect, be declaring erroneous in part the order fixing the tax on the first appraisal, while that order still remains unreversed, unmodified and in full effect, and this is not within my powers as surrogate. (*Matter of Schermerhorn,* 38 App. Div. 350.) Admitting, as has been claimed, that in this particular case the State is losing the tax upon certain property which, as it now appears, was properly the subject of taxation, it is better that this should be the case than that a dangerous precedent be established. Such cases can readily be guarded against in the future by insisting on the appraisal upon the non-deduction of claims of a doubtful and uncertain character. This could be done without substantial injury to the estate of the decedent, since in the event that said claims prove valid debts a proportional refund of the tax paid can be obtained under the provisions of section 225 of the Tax Law (Chap. 908), and similar sections in prior acts. Or, preferably, the question as to the taxability of that part of the estate offset by a disputed claim might be reserved until the validity or invalidity of such claim is definitely established. In *Matter of Westurn* (152 N. Y. 93), at page 101, a suggestion is made as to the propriety and mode of such a disposition. It is there said that "in many cases of large estates it would be perfectly safe for an appraisal to proceed before an accounting and for the surrogate to fix the tax on legacies, or even on the residuary interests, reserving from the appraisal at that time a sum adequate to meet all probable debts and charges, and leaving the adjustment of the tax on the

part reserved for a future occasion." In my own judgment, where deductions for doubtful or uncertain debts and claims are allowed, it would also be sufficient to have an appropriate recital in the appraiser's report and the order of taxation to the effect that the deduction so made is without prejudice to the right of the State to a further appraisal and taxation of the whole or any part thereof, in the event that it should afterwards appear that the items so deducted are not valid claims or are less than the estimated valuation at which they were allowed in reduction of the total assets of the estate. Submit order in accordance with above views.