### In re CRERAR'S ESTATE.

·(Supreme Court, Appellate Division, First Department.  December 31, 1900.)

1. TAXATION—TRANSFER TAX—SURROGATE COURT—AMENDMENT OF ORDER.
    The surrogate court has no authority to amend an order assessing a transfer tax, since the jurisdiction to assess such tax is special, and authority to amend the order is not given in the statute.

2. SAME—APPOINTMENT OF APPRAISER.
    Laws 1896, c. 908, § 230, which authorizes a surrogate to appoint an appraiser of property subject to the transfer tax as often and whenever occasion may require, does not authorize a surrogate to appoint an appraiser for personal property which was presented at a former appraisal, and wrongfully rejected as not being taxable.

3. SAME—OMITTED PROPERTY.
    On the appraisal of property under the transfer-tax law, the attorney for the executor filed an affidavit that certain real property was all the property owned by testator, but it was not shown that the appraiser gave any effect thereto, but he reported that the real estate was the only property of decedent which was subject to the payment of such tax. It was generally supposed at the time that personal property was not subject to such tax. *Held* sufficient to show that decedent's personal estate had been brought to the appraiser's attention, which will prevent a new appraisement on the ground that the property was omitted.

Appeal from surrogate's court, New York county.

Application by the state comptroller for an appraisal for the purposes of imposing a collateral inheritance tax on the property of the estate of John Crerar, deceased. From a decision of the surrogate's court denying the application by the executors to dismiss the proceeding (65 N. Y. Supp. 573), they appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

William C. Wallace, for appellants.
Emmet R. Olcott, for respondent.

HATCH, J.  John Crerar, a resident of Chicago, died in that city ·on October 19, 1889. He owned real property in this state, situate in the city of New York, known and designated in this proceeding as "91 John Street." He also owned personal property, shown by the executor's inventory filed in January, 1890, in the probate court of Cook county, Ill., consisting of cash balances in banks in the city of New York amounting to about $7,500, stocks in New York corporations amounting to about $235,000, and an interest in the firm ·of Morris K. Jessup & Co. The stock certificates and securities were kept in Illinois, at the testator's domicile. On the 31st day of ·October, 1892, Crerar's executors presented a petition to the surrogate of the county of New York, stating, among other things, that they were informed that a portion of the property of the estate was subject to the inheritance tax, and asking that a competent person be appointed as appraiser to value it. An appraiser was thereupon duly appointed, who gave notice to all interested parties, including the city comptroller, and, after appraising the property, reported, among other things, as follows: "I appraised certain real property ·of said John Crerar, deceased, being all the property of decedent

known to be in the state of New York, and which is subject to the payment of said tax, at its fair market value, as follows." Then follows an appraisal of the premises No. 91 John street at $58,000. Thereafter, and on motion of the executors, an order was made and entered, in which it is recited that "the only property belonging to John Crerar within the state of New York is the premises known as '91 John Street,'" and confirming said report. Notice of the assessment of the tax was thereafter given to the state and city comptrollers, and the executors paid the city the amount of the tax, $2,900. No appeal was taken from the order confirming the report of the appraiser, nor from the assessment of the tax. In July, 1894, the executors had an accounting in the probate court of Illinois, and a decree was made and entered settling their accounts and distributing the estate, and the executors were discharged. In September, 1898, the comptroller of the city of New York made application to the surrogate of the county of New York, by petition, setting forth the claim that the personal property of the estate had never been appraised; that the fact had but just been brought to his notice; that the fact of the existence of the personal estate had been suppressed; and praying for the appointment of an appraiser to appraise the same, and to reappraise the real property. Upon that application an appraiser was appointed. The executors appeared before the appraiser, and objected to the jurisdiction of the court making the order, and making various other objections to the proceedings for the reappraisal of the estate. They then made a motion in surrogate's court to dismiss the proceeding for lack of jurisdiction and on various other grounds. The comptroller then procured an order for the executors to show cause why the order of the surrogate of December 19, 1892, should not be amended to conform to the report of the appraiser. The matter then came before the surrogate upon the two motions. The motion to amend the order of December 19, 1892, so as to make the recitals therein correspond with the appraiser's report, was granted, the application to reappraise the real estate was denied, and the motion to dismiss the proceedings instituted by the comptroller to appraise the personal estate was denied. From the orders thereupon entered this appeal is taken.

The question is thus presented of the power and authority of the surrogate to amend an order in these proceedings, and of his jurisdiction to appoint an appraiser of the personal estate, under the existing circumstances. We have reached the conclusion that the surrogate had no jurisdiction or power to make either order. Courts have no general powers or jurisdiction in these proceedings. The only authority is to be found in the act itself. The jurisdiction is special, and specially conferred by the act. In re Pierson, 19 App. Div. 480, 46 N. Y. Supp. 557. We find no authority conferred by the statute to make either of the orders in question. There is an entire absence of authority to amend the order of December 19, 1892. There is no provision of the statute permitting the surrogate to amend any decree or order, even his own. The remedies provided by the statute in force at the time the orders appealed from were

made are—First, an appeal to the surrogate within 60 days from the fixing, assessing, and determination of the tax by him; second, an application by the comptroller, if he believes that an appraisal, assessment, or determination has been fraudulently, collusively, or erroneously made, to a justice of the supreme court, the application to be made within two years after the entry of the order or decree. Laws 1897, c. 284, § 232. Under chapter 399, Laws 1892, which was the statute in force at the time of the original application for appraisal, the only remedy seems to have been by appeal within 60 days.

If we are right in our conclusions as to the power of the surrogate in these matters, it follows that the authorities cited by the respondent touching the general power and jurisdiction of surrogates have no application, and we do not discuss them.

It is contended that the provisions of the statute (section 230, c. 908, Laws 1896) which permits the surrogate upon his own motion, or upon the application of any party interested, including the comptroller of New York City, as often and whenever occasion may require, to appoint an appraiser, confers jurisdiction to make the order of the appraisal of the personal estate. We do not so regard it. We think it cannot be held to authorize a surrogate to make an appraisal of property which was owned by the executors, and which was subject to tax at the time the former appraisal was made, simply because that property was erroneously omitted from the appraisal. That section of the act applies to a case where the property has been subsequently discovered by the executors, or where the circumstances at the time of the appraisal were such that the value of the property, or the value of the taxable interest, could not be ascertained; in which cases it is made the duty of the surrogate to appoint a new appraiser to make a new appraisal under the new conditions. This in no wise authorizes a reappraisal or reconsideration of matters already passed upon. When the property is in the hands of the executors at the time of an appraisal, it is their duty to present it for appraisal, and if they do present it, and the surrogate erroneously declares it not to be taxable, the remedy is by appeal to the surrogate himself, and thence to the appellate division.

Respondent insists that this personal estate was never brought to the attention of the appraiser; but we cannot agree with him. The only things disclosed by the record bearing upon that question are the report of the appraiser, and an affidavit of Wallace, who was an attorney for the executors at the time of the application for appraisal. Wallace alleges, upon information and belief, that the only property belonging to said estate in the state of New York are the premises No. 91 John street. It does not appear what force or effect, or that any force or effect, was given by the appraiser to this affidavit. It is not recited in his report, nor otherwise referred to in any of the proceedings. It therefore rests upon the report to disclose what property was before him. The language of the report leads us to the conclusion that this personal estate was brought to the attention of the appraiser, and that he held that it was not tax-

able. He says, after mentioning the premises No. 91 John street,. "being all the property of decedent known to be in the state of New York, and which is subject to the payment of said tax." If the real property was the only property brought to his attention, why say anything about property "subject to the payment of said tax"?

This conclusion is much strengthened by the fact that at the time this appraisal was made it was very generally believed, and had in fact been held, that the only property of a nonresident which was taxable under the taxable transfer act was real estate, and that personal property, so far as it consisted of choses in action, was not taxable. This belief was not dispelled until the decision of the Bronson Case, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, in 1896; this court having held in that case that neither stocks nor bonds of a domestic corporation owned by a nonresident decedent, the bonds and certificates of stock being held at the domicile of the decedent, were taxable under that law. It seems clear that this property was brought to the attention of the appraiser, and that he held that it was not subject to the tax. The surrogate had no jurisdiction to cause it to be reassessed because it was erroneously held exempt, nor to have it reconsidered or again passed upon in any form.

It follows that the orders appealed from should be reversed, with $10 costs and disbursements, the motion to amend denied, and the motion to dismiss the proceedings granted, with $10 costs. All concur.