In the Matter of the Appraisal, under the Act in Relation to Taxable Transfers of Property, of the Property of STEPHEN C. DIMON, Deceased, Died January 12, 1893.

FREDERIC D. PHILIPS, Appellant; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

*Transfer tax — not to be assessed on the amount of disbursements made by an executor — the assessment of the tax thereon should be reserved until the executor's accounting — reservation in the order of the right to apply for a modification thereof.*

Where the appraisal of a decedent's estate for the purpose of assessing a transfer tax thereon takes place prior to the judicial settlement of the accounts of the executor or administrator, if there is reasonable ground for doubting the validity of any debt paid or the necessity or reasonableness of any disbursement made in the administration of the estate, the report of the appraiser and the order entered thereon may reserve the question as to assessing the transfer tax on a portion of the estate equal to the amount of the doubtful claims and presently impose a tax on the residue. Thereafter, when the accounts of the executor or administrator are finally settled, the transfer tax may be imposed on the remainder of the estate to the extent that it passes to the transferee by the disallowance of the disputed claims.

It is, consequently, improper for the appraiser to disallow a portion of the disbursements made in good faith by the executor or administrator and presently assess a transfer tax upon that portion of the estate represented by the disbursements so disallowed, particularly where the order made in the proceeding does not reserve to the parties interested the right to apply for a modification of the order in the event of the disputed disbursements being allowed on the final accounting.

APPEAL by Frederic D. Philips, a legatee and beneficiary under the will of Stephen C. Dimon, deceased, from a decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 14th day of May, 1902, affirming an order

entered in said court on the 16th day of January, 1902, assessing and determining a tax upon the interest of the said Frederic D. Philips in the estate of the said testator.

*Charles K. Carpenter,* for the appellant.

*William R. Wilder,* for Charles L. Dimon, as administrator.

*George M. Judd,* for the respondent.

LAUGHLIN, J.:

It appears that Stephen C. Dimon died on the 12th day of January, 1893, and that the appellant, who is his nephew, took either by will or inheritance a one-sixth interest in his personal and real property. The other five-sixths went to the decedent's brothers and sisters and its transfer to them is not taxable. The order appointing the appraiser to determine the value of the interest transferred to the appellant for the purpose of assessing the transfer tax was made on the 5th day of December, 1894; but the appraisal was deferred by consent owing to the fact that the estate was largely involved in litigation. The report of the appraiser was filed on the 9th day of January, 1902, and he finds the total value of the decedent's personal estate was $12,775.99 and that the total value of his real estate was $28,500. The appraisal in this regard is acquiesced in by all. The controversy is over the amount that should be deducted for the expenses of administration and commissions of the administrator. It was shown by affidavits, and undisputed, that the administrator has paid out and disbursed for undertaker's bill, tombstone, doctor's bills and legal services and disbursements in the administration proceedings and in two actions brought against him as administrator and one brought by him in that capacity and for his commissions the sum of $11,091.47. The appraiser, instead of allowing and deducting this amount, fixed the commissions of the administrator at $196.98 and the amount of debts, including undertaker's bills, tombstone, doctor's bills and legal services, $3,077.01, making a total of $3,273.99, which, deducted from the total value of the personal estate, left the value of the net personal estate $9,502. The appellant's interest in the personal estate was fixed at $1,583.66, being one-sixth of this amount, which, together with one-sixth of the value of the real estate,

aggregates $6,333.36; and upon this sum the transfer tax of five per cent, amounting to $316.69, has been assessed. The record does not show any judicial accounting allowing or disallowing these disbursements made by the administrator. The amounts paid for legal services and for disbursements in the various litigations are shown separately, and they are supported by the affidavit of the attorney for the administrator, showing that they were necessarily incurred and that they are reasonable in amount, and these facts are not controverted by affidavit or other proof. The actions *against* the administrator either involved the whole or a large part of the estate. It was his duty to defend them, and through the efforts of his counsel the defense was successful. The action brought by him was also for the benefit of the estate, and resulted in the recovery of several thousand dollars. It is contended that the actual disbursement of these amounts by the administrator and the proof by affidavit that they were necessary and reasonable, are not controlling owing to the fact that the expenses appear to be disproportionate to the value of the estate. It is conceded that the statute contemplates that the transfer tax shall not be imposed upon the *estate*, but only upon the *interest*, which will ultimately pass to the transferees. This necessarily requires a deduction of all debts and expenses of administration before the correct amount of the transfer tax can be ascertained. (*Matter of Gihon*, 169 N. Y. 443; *Matter of Rice*, 56 App. Div. 253; *Matter of Gould*, 19 id. 352.) It is claimed, however, that for the purpose of ascertaining the amount of the estate that will pass to the transferee and is taxable, the appraiser is vested with authority to determine the amount of debts, expenses of the administration and commissions of the administrator, and, apparently, that he is not bound to follow the evidence presented on these subjects. If this be so, it is manifest that justice will not even be approximated in many cases; and that claims allowed by the appraiser in determining the value of the transferred estate may be disallowed by the surrogate on the accounting of the administrator or executor, and claims disallowed by him may subsequently be allowed by the surrogate in settling the estate. Since the appraisal may be had before the judicial settlement of the accounts of the executor or administrator, and it is also subject to review by the surrogate in advance of such accounting and without having all

parties in interest before him, there is danger of conflicting or inconsistent decisions on the same question by the same judicial officer. The statute should not receive an interpretation which will lead to such results. Section 225 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1901, chap. 173), relating to taxable transfers, provides that if after the payment of a legacy or distributive share from which a transfer tax has been deducted, or upon which it has been paid by the person entitled to the legacy or distributive share, such person is required by order of the surrogate, on notice to the State Comptroller, to refund the same or any part thereof on account of the subsequent proving of a debt against the estate, an equitable proportion of the tax shall be repaid to him. This section further provides that if an order fixing a tax shall be modified or reversed, on notice to the State Comptroller, within two years after entry, the amount of any tax paid pursuant thereto in excess of that required by the order as modified or reversed shall be refunded to the person paying the same, provided application be made therefor within one year after such reversal or modification; and, further, that where it shall be proved to the satisfaction of the surrogate, who has assessed a tax upon the transfer of property, "that deductions for debts were allowed upon the appraisal, since proved to have been erroneously allowed, it shall be lawful for such surrogate to enter an order assessing the tax upon the amount wrongfully or erroneously deducted." The provisions of this section of the Tax Law, properly understood, point out the way to avoid inequitable results and conflicting determinations in making deductions for debts and expenses of administration in advance before the exact amount is definitely known. In the case at bar, the disbursements having been made apparently in good faith and being shown affirmatively to be reasonable, we think they should have been allowed by the appraiser and by the surrogate on the appeal. Then, if it should be shown on the accounting that too much was allowed, the surrogate could enter an order assessing the amount of property thus shown to have been wrongfully or erroneously deducted, and in that case it would not be necessary to open the transfer tax proceeding or appoint another appraiser. (*Matter of Rice, supra.*) Where there is reasonable ground for doubting the validity of any debt paid, or the necessity or reasonableness of any of the disbursements

made in the administration of the estate, the report of the appraiser, and the order of the Surrogate's Court could reserve the question as to assessing the transfer tax on an amount of the interest, supposed to be transferred, equal to the amount of the doubtful claims, and presently impose the tax on the rest. The tax could subsequently be imposed on the remainder of the estate to the extent that it passed to the transferee by the disallowance of the disputed claims on the final accounting. (*Matter of Rice, supra; Matter of Westurn*, 152 N. Y. 93, 101.) True, the statute affords a remedy for obtaining a refund of a tax erroneously assessed, but the original order assessing the tax must first be modified, and it is not altogether clear that the court has no discretion on such an application or that the appellant would have an absolute right to have the order modified by conforming the deduction for debts and expenses of administration to that made in the decree settling the accounts or that such remedy would be adequate. Moreover, the order under review contains no reservation of the appellant's right to make such application, and there is room for the contention that it would be *res adjudicata* as to the amount of debts and expenses of administration. (*Matter of Rice, supra.*)

In so far as the estate has not been administered at the time of the appraisal, we understand it to be the practice to estimate the unpaid debts and expenses of administration, and we deem that practice unobjectionable, provided the report and order reserve the right of those whose interests are assessed to a rebate in case it shall appear by the decree settling the accounts that the debts or expenses have been estimated too low and a provision for a further assessment — although perhaps this is not strictly necessary — if estimated too high.

The order should be reversed, with ten dollars costs and disbursements, and a new appraisal ordered.

VAN BRUNT, P. J., O'BRIEN, INGRAHAM and McLAUGHLIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and new appraisal ordered.