IN THE MATTER OF THE ESTATE OF JOSEPH GORDON, DE-
CEASED.

[No. 18,338; decided August 18, 1904.]

**Inheritance Tax—Statute of Limitations.**—The defense of the stat-
ute of limitations is applicable to a proceeding against executors for
the collection of collateral inheritance tax. Such a proceeding is
barred under the provisions of section 338, Code of Civil Procedure,
by the lapse of three years after the accrual of the liability; and
the liability is complete at or before the close of the administration.

**Inheritance Tax—Limitations.**—If the Executor Occupies the Posi-
tion of a Trustee for the state as to the collateral inheritance tax,
this relation does not continue in the manner to prevent the running
of the statute of limitations after proceedings have been had to fix
the tax, and the amount thereof fixed and ordered paid, and the
residue of the estate distributed and the administration closed.

**Inheritance Tax—Former Adjudication.**—The establishment by a
court of the collateral inheritance tax payable by an estate is an ad-
judication upon that subject which binds the state as well as the
estate, as to all questions passed upon.

Joseph Gordon died February 11, 1897, or twenty-six days
before the enactment of March 9, 1897, amending the col-
lateral inheritance tax statute, went into effect. He left a
will disposing of all his estate, and giving it all to his niece,
excepting only $14,500 in pecuniary legacies to other col-
lateral relatives and $1,400 in several small legacies to chari-
ties. The administration of his estate was commenced by the
filing of his will on the nineteenth day of February, 1897,
and in the course of the administration the county treasurer,
in discharge of what he deemed to be his duty under the
collateral inheritance tax act, made application to the court
for an order upon all the legatees and devisees under the
will to show cause why they should not be required to pay
the tax provided by the act. This application was made by
petition filed on May 24, 1898, whereupon a citation was
issued to and served upon all the persons interested in the
estate, and on June 4, 1898, returned and filed herein; and
thereafter, on June 9, 1898, the court made its order assess-
ing and fixing the collateral inheritance tax payable out of
the estate and directing its payment.

At the time these proceedings were had, it was contended on behalf of the residuary legatee and devisee under the will that all the provisions of the enactment of 1897 were constitutional and effective, and that section 2 of that enactment making its exemptions applicable to all property which had already passed, except where the tax had already been paid, had the effect of exempting that portion of the estate which went to the testator's niece. This view (probably acceded to by the treasurer at that time) was adopted by the court, and by its order of June 9, 1898, therefore, it directed payment of collateral inheritance tax on the pecuniary legacies aforesaid amounting to $14,500 and assessed and fixed the tax payable thereon at $725; and with reference to the residue of the estate, the language of the order is as follows: "And all the rest, residue and remainder of said estate is, and the legacies and legatees mentioned in said will other than those above named are, exempt from said collateral inheritance tax."

Upon these proceedings being had, the executors, in obedience to the court's order, made June 9, 1898, the payments therein directed, and afterward, to wit, on August 13, 1898, presented and filed herein their final account showing such payment to have been made, together with their petition for the final distribution of the residue of the estate to the persons entitled. Upon due notice given of the settlement of this final account and of the hearing of this petition of final distribution, the court made, on August 26, 1898, its decree of final settlement and distribution, finding that all taxes, debts, expenses and charges of administration had been paid, and directing the payment by the executors of the residue of the estate to the legatees and devisees in the manner and proportions in the decree specified. In compliance with this decree, the executors, as shown by their vouchers, thereafter filed, paid over and delivered all the property and estate remaining in their hands, and on December 15, 1898, filed herein their vouchers showing such to be the fact to the satisfaction of the court; whereupon the court made, on the last-named day, its decree of final discharge of the executors, adjudging and declaring the estate to have been fully administered and the trust settled and closed, and since that

time no portion of the property of the estate has been in the possession or under the control of either of the executors, and neither of them has had any interest therein.

Thereafter the supreme court, in the case of Estate of Stanford, 126 Cal. 112, decided that the provisions of section 2 of the enactment of 1897 are unconstitutional so far as they apply to any estate which had passed prior to the enactment, because they were tantamount in effect to a gift of public property rights already accrued, thus establishing, as a matter of law, that this court had erred when it made the order it did herein declaring that the estate bequeathed to the niece was exempt from the tax. No appeal, however, has ever been taken from any of the orders made herein, and the time for appeal from them has long since expired; and no motion has ever been made for relief from the effect of any of the orders or decrees herein because of any inadvertence, surprise or mistake or excusable neglect.

Arthur G. Fisk and Clay P. Gooding, for the city and county treasurer.

Edward C. Harrison and James C. Adams, for the executors.

COFFEY, J. 1. The first contention made on behalf of the treasurer in support of his application now before the court is that the statute of limitations does not bind the state with regard to the collection of the collateral inheritance tax; and in support of this he cites several authorities, all of which have been carefully examined and considered by the court.

The language of the statute upon which reliance is placed to obviate or avoid this defense is as follows: "All administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed."

The Political Code (section 3716) contains the following language: "Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all property of the delinquent; the judgment is not satisfied nor the lien

removed until the taxes are paid or the property sold for the payment thereof.''

The language of the provision last above quoted is at least as strong as that above quoted from the statute under consideration; yet it has been distinctly held that it has not the effect of suspending the operation of the statute of limitations: San Francisco v. Jones, 20 Fed. 188; San Diego v. Higgins, 115 Cal. 170, 46 Pac. 923.

And it is expressly provided in the statute of limitations itself (Code of Civil Procedure, section 345), that the limitations prescribed in that chapter apply to actions brought in the name of the state or for the benefit of the state in the same manner as to actions by private parties.

As against these authorities, those cited on behalf of the application do not seem to me to have prevailing effect. The Pennsylvania decisions are based upon the maxim ''Nullum tempus occurrit regi,'' which is held to apply with strictness, except in those cases where the state has chosen to bind itself by the statute of limitations; and this maxim is expressly enacted out of our law by the provision of Code of Civil Procedure, section 345, already mentioned.

Vanderbilt's Estate, 10 N. Y. Supp. 239, cited by counsel for the treasurer, holds that the collateral inheritance tax is a tax upon the devolution of property and not a penalty or forfeiture, and, therefore, that the provisions of section 384 of the New York Code of Civil Procedure, providing that an action upon a statute for a penalty or a forfeiture is barred by the lapse of two years, does not apply; thereby holding and deciding (impliedly, at least) that the provisions of section 282 of the same code, which provides that the lapse of six years will bar an action upon a liability created by statute other than a penalty or forfeiture, does apply.

Russ v. Crichton, 117 Cal. 695, 49 Pac. 1043, relates to the issuance of a tax deed to the state, and to the limitation provided by section 3788, Political Code, as amended in 1895 before the statute had been amended so as to provide for the sale to the state of property for delinquent taxes, and is certainly not as nearly in point upon the question of limitation in a case of this kind as are the authorities hereinbefore mentioned. The doctrine of San Diego v. Higgins, supra, is

in no manner limited or modified there; and the case is not even referred to. The broad distinction between the two cases, so far as this particular point is concerned, lies in the fact that section 3788, Political Code, is not a part of the same chapter with section 345, Code of Civil Procedure.

This same section 345, Code of Civil Procedure, interferes also with the application of the case of Strongton v. Baker, 4 Mass. 526.

2. Counsel for the treasurer contends further that the executors occupy the position of trustees for the state with reference to this tax, and that as such trustees they are not entitled to the benefit of the statute of limitations. The most that can be said for this proposition, however, is, that it might possibly suspend the beginning of the running of the statute until the executors settled their final account and closed their trust as such, by applying for, and obtaining, their final discharge.

If the executors are trustees at all in this connection, they are trustees of an implied trust only, and in such case the statute will run: Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718; Raymond v. Simonson, 4 Blackf. 77; 27 Am. & Eng. Ency. of Law, 1st ed., 102, and cases cited.

But even if the executors should be considered as trustees of an express trust, that trust was closed when their authority as executors ceased upon their final discharge after compliance with the decree of final distribution, and if the state ever had a cause of action against them, it had a complete cause of action at that time, and if it has not now become barred it never will: 13 Am. & Eng. Ency. of Law, 1st ed., p. 688, and cases cited; Clarke v. Johnston, 85 U. S. 493, 21 L. Ed. 904; Coleman v. Davis, 2 Strob. Eq. 334.

In Clarke v. Johnston, supra, Mr. Justice Miller said: "It may be conceded that, so long as a trustee continues to exercise his powers as trustee in regard to property, that he can be called to an account in regard to that trust. But when he has parted with all control over the property, and has closed up his relation to the trust, and no longer claims or exercises any authority under the trust, the principles which lie at the foundation of all statutes of limitation assert

themselves in his favor, and time begins to cover his past transactions with her mantle of repose.''

The fact that before the executors in this case applied for final distribution of the estate, proceedings had been had to ascertain and fix the tax, and ascertain and prescribe the duties of their trust in that regard, and that tax and those duties as so ascertained and fixed had been paid and discharged by them, makes their position upon the statute of limitations even stronger.

As against the proposition that these executors are trustees only of an implied trust, if trustees at all as to this matter, counsel for the treasurer cite specially in their reply brief the case of Luco v. De Toro, 91 Cal. 405, 27 Pac. 1082; but in that case the express trust mentioned and considered by the court was one created by a contract entered into between Hartman and the decedent Olvera in his lifetime, and it was with reference to that trust that the court there laid down the rule which requires some open disavowal of the trust relations created by the contract, and notice of such disavowal, in order to set the statute running.

And whatever may be said of the trust character of the relation between the administrator or executor and the state with reference to the collateral inheritance tax, it would seem that it can only apply after all to such sum as shall have been ascertained and fixed by the court in the manner provided by the statute as properly belonging to the state and payable by the administrator or executor as collateral inheritance tax. And that sum, so ascertained and fixed, has been paid.

3. Counsel for the executors have contended also that the order of this court made June 9, 1898, amounted to a former adjudication, which is a bar to this application by the treasurer; and this contention seems to be well grounded in the authorities cited.

In Pennsylvania the statute provides (Act of May 6, 1887, section 20) that ''the lien of the collateral inheritance tax shall continue until the said tax is settled and satisfied.'' And under that statute was rendered the decision of the supreme court of that state in Moneypenny's Estate, 181 Pa. 309, 37 Atl. 589, in which the court said:

"The error, if there was one, was due to the appraiser's erroneous judgment, deliberately reached upon knowledge of all the facts. The commonwealth seeks, and the court has sustained, a second appraisement to revise the judgment of the appraiser. Clearly this cannot be done. The plain statutory remedy for such a case is not a second appraisement, but an appeal from the first."

In New York, the original statute (Statute of 1885, chapter 483) contains language identical to that of our statute hereinbefore quoted. Subsequently it was amended (Laws of 1892, chapter 399, section 3) so that it now provides that "Every such tax shall be and remain a lien upon the property transferred until paid to the person to whom the property is so transferred, and the administrators, executors and trustees of every estate so transferred shall be personally liable for such tax until its payment."

The decisions of the New York court cited by executor's counsel are the following: In re Nevin, 20 Misc. Rep. 550, 61 N. Y. Supp. 956; Rice's Estate, 29 Misc. Rep. 404, 61 N. Y. Supp. 911; Crerar's Estate, 67 N. Y. Supp. 795, 56 App. Div. 479; Wallace's Estate, 28 Misc. Rep. 603, 59 N. Y. Supp. 1084; Bruce's Estate, 59 N. Y. Supp. 1083; and Schermerhorn's Estate, 57 N. Y. 26, 38 App. Div. 350.

Most of these decisions, and perhaps all of them, were rendered before the amendment of 1892, but whether before or after is immaterial for the present purpose, for, as already stated, the original act of 1885 is identical with the provision of our statute, and the amendment of 1892 is couched in even stronger language.

In re Nevin was a case where the question arose very much in a similar manner as here. A bequest to Mr. Chauncey M. Depew of $20,000 was reported by the appraiser as not subject to tax, because he was an executor, and the will provided that in view of the bequest he should charge no commission, and because it had been held by the supreme court in the case of Gould that such legacy was not subject to tax. Later the court of appeals reversed the supreme court in the Gould case (156 N. Y. 423, 51 N. E. 287), and in the light of the law as there laid down it was sought to get a second appraisal and collect the tax on Mr. Depew's legacy; and this, it was

held, could not be done, and the decision in Moneypenny's Estate (supra), cited with approval.

In Rice's Estate, supra, the court said: "The appraisement proceeding furnishes an opportunity to the parties interested in the estate, on the one hand, and the state, on the other, to inquire fully as to the value of the property at the time of the decedent's death, and to obtain and present such testimony as may aid in the ascertainment of such value. Upon the proofs thus taken the appraiser makes his report, and the surrogate enters an order assessing and fixing the tax. This order is an adjudication in respect to the liabilities thereby fixed, and unless an appeal is taken therefrom is conclusive on all parties thereto."

And in the opinion in Crerar's Estate appears the following: "It seems clear that this property was brought to the attention of the appraiser, and that he held that it was not subject to the tax. The surrogate had no jurisdiction to cause it to be reassessed because it was erroneously held exempt, nor to have it reconsidered or again passed upon in any form."

These authorities are criticised by counsel for the treasurer, but are the only authorities furnished upon the point, and seem to sustain the contention.

In the opinion of the court, the application is barred by the provisions of section 338 of the Code of Civil Procedure, and also by the former adjudication of this court upon the matter; and the citation, therefore, will be discharged, and an order entered to that effect.