justified in issuing letters to her. The surrogate revoked letters on the authority of Kerr v. Kerr, 41 N. Y. 272. In that case letters of administration were granted to the appellant upon representations made in her petition that she was the widow of the intestate. It was clearly shown that she had good reasons for believing that she was the widow and that when she married the intestate there were no obstacles on her part to such marriage and she knew of none on the part of the intestate. On an application to revoke her letters it was shown that the respondent, who was previously married to the intestate, was his lawful widow, as a judgment of divorce granted to the intestate before his alleged marriage to the appellant was void. Letters to the appellant were revoked by the surrogate, and this was affirmed on the ground that the representation of the appellant that she was the widow of the intestate was false in fact and none the less false because she believed it to be true.

[3] On reflection I think Kerr v. Kerr is not in point here, as the administratrix did not omit any of the relatives of the intestate who would have a prior right to letters. The petition for revocation alleges a deliberate omission, but this is denied in the administratrix's replying affidavit. In Matter of McDonald, 160 App. Div. 86, 145 N. Y. Supp. 267, the court held that the surrogate cannot revoke letters of administration where charges of misconduct are denied without taking evidence and making findings of fact.

Motion for reargument granted, and the prior order to revoke letters vacated, but without prejudice to a new application to revoke the letters setting up further facts if desired.

---

(96 Misc. Rep. 119)

## In re CANFIELD'S ESTATE.

(Surrogate's Court, New York County. June 21, 1916.)

TAXATION ⬅895(4)—TRANSFER TAX—APPRAISEMENT—TIME AS OF WHICH APPRAISEMENT SHOULD BE MADE.

In a transfer tax proceeding, the transfer tax being imposed on the market value of property at the date of decedent's death, where affidavits submitted by competent expert employed by the estate was the only evidence before the appraiser as to the value of antique furniture and porcelain at the date of decedent's death, the transfer tax appraiser must accept market values as stated in the affidavit, and not the values for which the property was sold at a later date.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1718; Dec. Dig. ⬅895(4).]

In the matter of the estate of Richard A. Canfield. From an order assessing a transfer tax on the interest of the legatees, the executor appeals. Reversed and remanded.

Robert L. Redfield, of New York City, for executor.
William W. Wingate, of Brooklyn, for state comptroller.

FOWLER, S. The executor of decedent's estate has appealed from the order assessing a tax upon the interests of the legatees and al-

leges that the transfer tax appraiser erred in his valuation of certain items of tangible personal property located in this state.

The decedent died on the 11th day of December, 1914. At the time of his death he had his domicile in Rhode Island. He owned a collection of antique furniture, which was located in this state at the time of his death, and a competent appraiser made an affidavit in which he alleged that the market value of such furniture at the date of decedent's death was $65,175. Testimony taken before the transfer tax appraiser disclosed that this furniture was sold in August, 1915, for $159,999, and he accepted these figures as the value of the furniture for the purpose of the transfer tax.

The affidavit submitted by the expert employed by the estate was the only evidence before the appraiser as to the value of the furniture at the date of decedent's death. The state comptroller did not produce testimony to show that the appraisal made by the expert who submitted the affidavit on behalf of the estate was incorrect, but relied upon the testimony as to the price for which the furniture sold in August, 1915. The tax is imposed upon the market value of the property at the date of decedent's death. Matter of Rice, 56 App. Div. 256, 61 N. Y. Supp. 911, 68 N. Y. Supp. 1147; Matter of White, 208 N. Y. 64, 101 N. E. 793, 46 L. R. A. (N. S.) 714, Ann. Cas. 1914D, 75; Matter of Penfold, 216 N. Y. 163, 110 N. E. 497, Ann. Cas. 1916A, 783. The unsettled condition of the financial market in December, 1914, owing to the state of war existing between the principal European countries, made it difficult to dispose at that time of antique furniture of the kind mentioned in the appraisal; and the condition of financial depression existing at that time, contrasted with the buoyancy of the financial market at the date when the furniture was sold, probably accounts for the great discrepancy between the valuation placed upon the furniture by the expert employed by the estate and the price actually received upon the sale. As the only competent testimony submitted to the appraiser in regard to the value of the furniture showed that its market value at the date of decedent's death was $65,175, he should have accepted that valuation and not the price at which it was sold nine months later.

The decedent also owned certain porcelains, which were appraised by the expert employed on behalf of the estate at $12,915. This appraisal represented their value at the date of decedent's death. The executor submitted an affidavit showing that the porcelains were sold for much less than the appraised value, but the transfer tax appraiser accepted the valuation of $12,915. This was correct.

The order fixing tax will be reversed, and the appraiser's report remitted to him for correction as indicated.