Matter of the Estate of THOMAS H. HUBBARD, Deceased.

(Surrogate's Court, New York County, March, 1918.)

Transfer tax — finding of appraiser in a, proceeding — appeal — partnership — decedents' estates — evidence.

Decedent, who died in 1915, had been a member of a firm whose articles of partnership gave the surviving partner the right to retain possession of the deceased partner's interest in the firm for three years after his death and provided that the surviving partner's acts in connection with the property of the firm should be binding upon the heirs and legal representatives of the deceased partner as if he were the absolute owner of the property.   Upon the appraisal in a transfer tax proceeding of decedent's interest in certain securities, which prior to his death had been deposited by the firm as collateral for the payment of certain trust notes issued for a loan to a railroad com-

pany constructed and operated by the firm, it appeared that the notes did not mature until nearly a year after the death of decedent and that in the unsettled condition of the financial market in the year succeeding his death the value of the securities pledged as collateral might fluctuate very much. It further appeared that the securities were returned to the firm upon maturity of the trust notes but there was no evidence as to the new liability incurred by the firm at that time or of the new arrangement made by it for the payment of the notes and the release of the securities. *Held,* that a finding of the appraiser that the pledged securities had no value as part of decedent's estate at the date of his death should be affirmed.

APPEAL by the state comptroller from an order fixing the transfer tax.

Joline, Larkin & Rathbone (Adrian H. Larkin and Albert Stickney, of counsel), for executors.

Lafayette B. Gleason (John B. Gleason, of counsel), for state comptroller.

FOWLER, S.   The appeal of the state comptroller from the order fixing tax brings up for review the finding of the appraiser that the decedent's interest in certain securities deposited by the firm of Thomas H. Hubbard & Co. as collateral for the payment of certain trust notes of the Pittsburgh and Shawmut Railroad Company had no value as part of his estate, and that the market value of notes given by the Pittsburgh and Shawmut Railroad Company to the firm of Hubbard & Co. for $2,912,000 was $1,063,340.54.

The decedent died on the 18th day of May, 1915.

The facts in relation to the securities pledged as collateral are as follows: The decedent was a member of the firm of Thomas H. Hubbard & Co.   The firm was engaged for some years prior to the date of dece-

Misc.] Surrogate's Court, New York County, March, 1918.

dent's death in constructing and operating the Pittsburgh and Shawmut Railroad, the Pittsburgh, Shawmut and Northern Railroad and in developing certain coal lands contiguous to the railroads. The Pittsburgh and Shawmut Railroad Company was capitalized at $15,000,000, and the greater part of this was issued to acquire $3,607,200 stock of the Allegheny River Mining Company, and $12,000,000 refunding bonds of the Pittsburgh, Shawmut and Northern Railroad Company. The stock and bonds so acquired were pledged to secure $10,500,000 first mortgage five per cent bonds of the Pittsburgh and Shawmut Railroad Company. In April, 1914, the Pittsburgh and Shawmut Railroad Company borrowed $4,500,000, for which it issued three-year six per cent collateral trust notes. In order to induce bankers to make this loan, the firm of Thomas H. Hubbard & Co. deposited as collateral marketable securities of the value of $2,500,000. Of this amount decedent contributed $380,980. Besides the securities deposited by Thomas H. Hubbard & Co., there were also deposited as collateral for the trust notes $4,000,000 of the Pittsburgh and Shawmut five per cent bonds, $3,000,000 of the Allegheny River Mining Company five per cent bonds, and certain equipment having a value of approximately $600,000. The appraiser held that, at the date of decedent's death, his interest in the securities deposited by the firm of Thomas H. Hubbard & Co. as collateral for the trust notes was of no value.

The state comptroller contends that the appraisal of the decedent's interest in the securities should be suspended until three years from the date of decedent's death.

The partnership agreement provided that the surviving partner shall have the right to retain possession of the deceased partner's interest in the firm for the

period of three years after such partner's death, and his acts in connection with the property shall be as binding upon the heirs and legal representatives of the deceased partner as if he were the absolute owner of the property.

It is obvious that, irrespective of the provisions of the partnership agreement, if the value of the bonds of the Pittsburgh and Shawmut Railroad Company and the Allegheny River Mining Company pledged for the payment of the $4,500,000 six per cent trust notes is sufficient to pay these notes-at maturity, the securities pledged by Thomas H. Hubbard & Co. as additional collateral are worth their full market value to that firm, while if the bonds are insufficient for that purpose, the securities pledged by Thomas H. Hubbard & Co., being readily marketable, will be sold under the trust agreement and their value to the firm materially impaired or entirely destroyed. In estimating the value of the securities pledged by the firm it should also be taken into consideration that the firm has a junior claim against any part of the bonded collateral not exhausted by enforcement of the lien created by the indenture securing the six per cent notes.

Considerable testimony was taken before the appraiser to show the resources of the Pittsburgh and Shawmut Railroad Company and the Allegheny River Mining Company and the earnings of the companies. For the fiscal year ending June 30, 1915, the earnings of the companies were only sufficient to pay $144,084 of the $270,000 interest on the six per cent collateral notes, and the company was obliged to borrow the difference. The stock of the Pittsburgh and Shawmut Railroad Company is not customarily bought and sold in the open market, and the evidence before the appraiser showed that it has no market value. The

same applies to the stock of the Allegheny River Mining Company. A financial expert testified before the appraiser that the bonds of the Pittsburgh and Shawmut Railroad Company were worth about thirty. Upon this basis of valuation, as well as the evidence of the earnings of the company, it is evident that the company must default in payment of the $4,500,000 six per cent notes, unless it succeeds in making arrangements with bankers to take up the notes at maturity. If default were made, the securities pledged by the firm of Thomas H. Hubbard & Co., being readily marketable, would first be disposed of, and the bonds and equipment constituting the remainder of the collateral would scarcely be sufficient to pay the balance of the indebtedness on the $4,500,000 six per cent trust notes. The witnesses who testified before the appraiser to the effect that the securities were worthless as part of decedent's estate based their opinion upon the insufficiency of the other securities pledged for the payment of the six per cent trust notes, and the probability of the company defaulting when the time for the payment of the notes had arrived. Their evidence was not contradicted by the state comptroller, and it was sufficiently probable to merit acceptance by the appraiser.

It is, of course, difficult to ascertain with reasonable certainty the value of decedent's interest in the securities at the time of his death, as many factors affecting that value must be taken into consideration. In the first place, the notes did not mature until nearly one year after the date of decedent's death, and in the unsettled condition of the financial market in the year succeeding his death the value of the bonds pledged as collateral might fluctuate very considerably. If the bonds could be disposed of at about sixty-four, the securities deposited by the firm as collateral would be

Surrogate's Court, New York County, March, 1918.     [Vol. 103.

worth their face value; if they were sold under thirty, the securities would be disposed of under the lien and would be worthless to the firm. There is also the further element of uncertainty caused by the right of the surviving partner of the firm to retain all the firm assets for three years after the date of decedent's death, and to use the interest of the deceased partner as if it belonged absolutely to the survivor. If the surviving partner were unfortunate in his investments during those three years, he might materially reduce the value of the interest of the decedent in the firm; if he were fortunate, he might considerably augment the value of that interest.

But it is not upon the value of the interest that is finally paid over to the legatees that the tax is imposed, but upon the value of the interest transferred at the date of decedent's death. *Matter of Davis,* 149 N. Y. 539; *Matter of Penfold,* 216 id. 163.

If the contention of the state comptroller were upheld and taxation of the interest of the decedent in the firm of Thomas H. Hubbard & Co. suspended until three years after his death, the tax imposed would not be upon the value of the property transferred by the will of the decedent, but upon the value of that property as augmented or diminished by the operations of the surviving partner for the period of three years. In other words, some further speculation may yet lend value (although this is doubtful) to this unsuccessful railway scheme. But that fact ought not to be allowed to affect the proved valuation of General Hubbard's estate at the time of his demise.

Upon this appeal evidence was submitted that the securities deposited by the firm as collateral for the six per cent trust notes were returned to the firm upon the maturity of the notes, but there is no proof of the new liability incurred by the firm at that time, or the

new arrangement made by the firm for the payment of the notes and the release of the securities.

I am inclined to think that the cases cited by the attorney for the state comptroller in support of his contention that the appraisal should be suspended are distinguishable from the matter under consideration. In *Matter of Westurn,* 152 N. Y. 93, it was alleged by the executor that a note was due the decedent, but the maker of the note denied the obligation. It was held that taxation on the amount of the note should be suspended until it was determined that it was really a debt due the state. In *Matter of Skinner,* 106 App. Div. 217, it was held that the value of a claim then in litigation should be suspended until the termination of the litigation. In *Matter of Zefita,* 167 N. Y. 280, it was held that a tax cannot be imposed upon a legacy of a residuary estate until the amount of the estate or interest is ascertained.

In the matter under consideration there was no claim in litigation at the date of decedent's death; there was no uncertainty as to whether a claim was valid or invalid, and there were no means by which the value of the decedent's interest could in the future be more definitely determined than at the date of his death. I am therefore inclined to think that the appraiser was correct in finding that the pledged securities had no value as part of decedent's estate at the date of his death.

Part of the assets of the firm of Thomas H. Hubbard & Co. consisted of loans receivable having a book value of $2,912,000. The securities given as collateral for these loans consisted of notes of the Pittsburgh and Shawmut Railroad Company, and the testimony given before the appraiser showed that the market value of the loans at the date of decedent's death did not exceed $1,063,340. As no evidence was given by the state

Surrogate's Court, New York County, March, 1918.   [Vol. 103.

comptroller in relation to the value of these loans, and the evidence given on behalf of the estate was furnished by witnesses whose experience with financial operations and acquaintance with financial conditions rendered their testimony competent, I think the appraiser was correct in accepting their conclusions and appraising the loans receivable at $1,063,340.

The order fixing tax will be affirmed.

Order affirmed.