In the Matter of the Transfer Tax upon the Estate of THOMAS H. HUBBARD, Deceased.

THE STATE COMPTROLLER, Appellant; JOHN HUBBARD and Others, as Executors of the Estate of THOMAS H. HUBBARD, Deceased, Respondents.

First Department, January 13, 1922.

Taxation — transfer tax — value of property to be determined ordinarily at date of death — interest in partnership where surviving partner has three years to account — value of testator's interest ascertainable only after liquidation — amount for which surviving partner accountable to be taken as basis — value of securities deposited by testator as collateral for obligation of third party determinable at maturity of obligation.

Transfer tax accrues immediately upon the death of a testator or intestate and, therefore, the value of the property transferred by will or by operation of law on the death intestate of the owner is to be determined in all cases as of the date of the death of the owner, for the purpose of fixing the tax on the transfer thereof, and ordinarily it is presently so determinable; but in some instances neither can the property so transferred nor its value be determined immediately after the death of the testator or intestate.

Accordingly, where, under the terms of a partnership agreement between the testator and his partner, the surviving partner was given three years within which to liquidate the business, the value of the interest of the testator in the firm business, which passed under his will, could for the purpose of fixing the transfer tax, be determined only after such liquidation by the surviving partner.

*It seems*, that in such case the amount for which the surviving partner accounts or is held to be accountable to the estate of the deceased partner must be taken as a basis, and, possibly where practicable, may be increased or diminished according to whether the partnership assets depreciated or appreciated after the death of the testator, in order to determine the value of his interest at the time of his death; but when that is not practicable, the amount so accounted for should be deemed such value.

The value of the interest of the testator in securities pledged as collateral for the obligation of a third party, which did not mature until after testator's death, could only be determined by awaiting the maturity of the obligations of said third person, when only it could be known whether said obligations would be paid and whether and to what extent resort might be had to the collateral, the securities of the testator, for the payment thereof.

APPEAL by the State Comptroller from an order of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 18th day of March, 1918, affirming a prior order fixing and assessing a tax upon the transfers of property of Thomas H. Hubbard, deceased.

*Lafayette B. Gleason* [*John B. Gleason* of counsel], for the appellant.

*Larkin, Rathbone & Perry* [*Albert Stickney* of counsel; *Adrian H. Larkin* with him on the brief], for the respondents.

LAUGHLIN, J.:

On the appeal to the Surrogate's Court from the *ex parte* order it was contended in behalf of the State Comptroller that at the time of the appraisal it was impossible to determine the amount of the transfer tax upon certain securities of the testator which had been pledged as collateral security for the payment of an indebtedness of another and upon the interest of the testator in the copartnership business of Thomas H. Hubbard & Co., and that, therefore, the imposition of the tax on those properties should have been suspended. (See 103 Misc. Rep. 125.) The order from which the appeal to this court has been taken overrules those contentions and

First Department, January, 1922.    [Vol. 199

sustains the action of the appraiser and affirms the *ex parte* order fixing the transfer tax on all of the property left by the testator and disposed of by his will. The only points presented by the appeal are with respect to the correctness of these rulings.

The testator died on the 19th of May, 1915, leaving a last will and testament which was duly admitted to probate on the 2d of June, 1915. The will is not in the record, but it appears to have been assumed and is conceded that by it the testator disposed of all of his property. The firm of Thomas H. Hubbard & Co. was formed by the testator and one Searles on the 28th of June, 1898, and the copartnership agreement was modified by an agreement executed on the 17th of October, 1899. The interest of the testator in the firm was one-fifth, and Searles' interest was four-fifths. At the time of the death of the testator the copartnership was being continued by virtue of a supplemental agreement between the members thereof, made on the 30th of June, 1906, which, so far as here material, provides as follows: " In the event of the death of either party hereto, the survivor shall have sole custody of the partnership property for a period of three years after such death, if he shall live so long; with the right to liquidate and dispose of the same and make division thereof. His acts with reference thereto shall be binding upon the heirs, executors, administrators and assigns of the decedent, as completely as if he were the absolute legal and equitable owner of said property and shall be accepted as final without question and without any proof other than his own statement. To give effect to such acts and statements, this agreement shall operate, upon the death of either party, as a sale and delivery to the survivor of all the partnership property not then withdrawn from the partnership use." There is no evidence that the surviving partner made an accounting or relinquished his rights under the provisions of the copartnership agreement hereinbefore quoted. The appraiser assumed to appraise the value of the testator's interest in the business of the firm as of the date of his death, and determined that the value of such interest was $1,291,407.10. The nature of the copartnership business is shown only by the fact that the firm was formed to succeed to and manage the business

of a copartnership theretofore existing between the two partners and one Stillman, which terminated on the 1st of July, 1898, and by the firm assets, which consisted of credit balances in banks and capital stock in various corporations and real estate of the value of $586,088.06.

The transfer tax accrues immediately upon the death of a testator or intestate, and, therefore, the value of the property transferred by a will or by operation of law on the death intestate of the owner is to be determined in all cases as of the date of the death of the owner for the purpose of fixing the tax on the transfer thereof (*Matter of Penfold* [*William H.*], 216 N. Y. 171), and ordinarily it is *presently* so determinable; but it is manifest that in some instances neither can the property so transferred nor its value be determined immediately after the death of the testator or intestate; and such, I think, is this case with respect to the interest of the testator in the copartnership business.   The surviving partner was given three years within which to liquidate the business, and, at least in the absence of fraud, bad faith or gross negligence, his acts with respect thereto were not subject to review or question. It necessarily follows, therefore, that, by virtue of the copartnership articles, the value of the interest of the testator in the firm business, which passed under his will, could only be determined after such liquidation by the surviving partner. It seems to me that in such case the amount for which the surviving partner accounts or is held to be accountable to the estate of the deceased partner must be taken as a basis, and, possibly where practicable, may be increased or diminished according to whether the partnership assets depreciated or appreciated after the death of the testator, in order to determine the value of his interest at the time of his death; but when that is not practicable, the amount so accounted for should be deemed such value.   (See *Matter of Penfold* [*William H.*], 87 Misc. Rep. 525; affd., by App. Div., First Dept., on surrogate's opinion, but not reported, May 21, 1915; affd., 216 N. Y. 171; also *Matter of Penfold* [*Josephine*], Id. 163.) It has been held that, where property subject to a transfer tax consists of an interest in another estate which has not been settled, the imposition of the transfer tax must be suspended until there has been an accounting on the settlement of the

estate, by which such interest may be determined. (*Matter of Penfold* [*William H.*], 216 N. Y. 171; *Matter of Newcomb*, 35 Misc. Rep. 589; affd., 71 App. Div. 606; 172 N. Y. 608; *Matter of Phipps*, 77 Hun, 328; affd., 143 N. Y. 641; *Matter of Zefita, Countess de Rohan-Chabot*, 167 id. 280.) And it has also been held that where property subject to a transfer tax is in litigation, the imposition of the transfer tax must be suspended until the final determination of the litigation by which it may be determined what the interest, if any, is. (*Matter of Westurn*, 152 N. Y. 93; *Matter of Skinner*, 106 App. Div. 217.) These decisions are, I think, applicable here, and required that the imposition of the transfer tax on the testator's interest in the copartnership business should have been suspended until the surviving partner had liquidated the copartnership business.

The copartnership firm were the promoters of the Pittsburg and Shawmut Railroad Company, and were large owners of its securities and notes. Notes of the railroad company aggregating $2,500,000, maturing June 1, 1914, were outstanding. The testator was chairman of the board of directors of the railroad company, and as such, in order to meet said notes and to obtain additional working capital for the company, he arranged with the Guaranty Trust Company to sell notes of the railroad company, amounting in the aggregate to $4,500,000, secured by collateral held for the payment of the said notes, maturing June 1, 1914, and additional collateral having a market value of $2,500,000, to be furnished by his said firm. Pursuant to the arrangement, the firm deposited with the Guaranty Trust Company securities of the market value of $2,565,125, of which securities of the value of $380,900 belonged to the testator individually, but the firm had the right to use them. The notes, which were to become due and payable on the 1st of May, 1917, were accordingly negotiated. It thus appears that the notes of the railroad company for which copartnership securities and securities owned by the testator individually were pledged as security, did not become due or payable until nearly two years after the death of the testator. The appraiser made his report on April 6, 1917, twenty-five days before said notes became due and payable. He assumed to appraise the value of the testator's

interest or equity of redemption in the securities as so pledged for the payment of the notes of the railroad company on evidence with respect to the assets and liabilities of the railroad company and its prior earnings and prospects for the future, and concluded therefrom that the railroad company would be unable to meet its obligations, and that it would become necessary to resort to the collateral to meet the notes, and that there would be no surplus; and, on that theory, he found that the interest of the firm and of the testator in the collateral at the time of the death of the testator was of no value and, therefore, subject to no tax. It was shown, however, on the appeal to the Surrogate's Court, and the additional evidence was properly received (*Matter of Westurn, supra*), that the railroad company paid the notes at maturity and that all of the collateral was returned to the surviving partner unimpaired. It is, I think, manifest that the value, if any, of the interest of the testator in the securities so pledged as security, not for an indebtedness *of his firm or his own*, but for an indebtedness of a *third party*, could only be determined by awaiting the maturity of the notes, when only it could be known whether they would be paid by the maker, and whether and to what extent resort might be had to the collateral for the payment thereof. Of course, if the testator were the primary debtor, a different rule would obtain. (*Matter of Grosvenor*, 124 App. Div. 331; *Matter of Hallenbeck*, 195 id. 381.)

I am of opinion, therefore, that the learned counsel for the State Comptroller is right with respect to both contentions, and that the order should be reversed, with ten dollars costs and disbursements, and the matter remitted to the appraiser to make a new appraisal with respect to these properties in accordance with this opinion.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and matter remitted to surrogate for further action in accordance with opinion. Settle order on notice.